EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| James D. Shuler<br>Recurrida<br><br>v.<br><br>Leone M. Shuler<br>Peticionario | Certiorari<br><br>2002 TSPR 109<br><br>157 DPR _____ |

Número del Caso: CC-2002-352


Fecha: 19 de agosto de 2002


Tribunal de Circuito de Apelaciones:
                        Circuito Regional II


Jueza Ponente:
                        Hon.Jeannette Ramos Buonomo

Abogada de la Parte Peticionaria:
                        Lcda. Larissa Torres del Campillo

Abogada de la Parte Recurrida:
                        Lcda. Sigrid López González

Materia: Divorcio (Separación)

        Este documento constituye un documento oficial del Tribunal Supremo
        que está sujeto a los cambios y correcciones del proceso de
        compilación y publicación oficial de las decisiones del Tribunal.
        Su distribución electrónica se hace como un servicio público a la
        comunidad.

James D. Shuler

    Demandante-recurrido

       vs.                CC-2002-352     CERTIORARI

Leone M. Shuler

    Demandada-peticionaria

Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LOPEZ

San Juan, Puerto Rico, a 19 de agosto de 2002

La parte demandada, aquí peticionaria, Leone M. Shuler y el demandante, aquí recurrido, James D. Shuler, contrajeron matrimonio el día 7 de octubre de 1989, en el estado de Virginia, Estados Unidos de Norteamérica. Allí establecieron su residencia conyugal en la ciudad de Virginia Beach. El 17 de junio de 1991 nació, en el referido estado, la única hija procreada durante su matrimonio, de nombre Victoria Anne Marie Shuler.

Alrededor de dos meses después, esto es, durante el mes de agosto de ese mismo año, el demandante-recurrido tuvo que trasladarse a Panamá como integrante del Comando Sur del Ejército de los Estados Unidos; ello, a requerimiento de las

Fuerzas Armadas de los Estados Unidos, a las cuales pertenecía. No obstante su traslado, éste quedó adscrito al servicio activo del Ejército en Virginia Beach. Tanto la demandada-peticionaria, como la hija menor, ambas domiciliadas del estado de Virginia, permanecieron viviendo en la residencia que compartían con el demandante en Virginia Beach antes de que éste fuera trasladado a Panamá.

Cabe señalar que, mientras el demandante se encontraba destacado en Panamá, el 16 de agosto de 1994   --a solicitud de la demandada y debido a problemas surgidos entre ellos-- el Tribunal de Circuito de la Ciudad de Virginia Beach, emitió un decreto mediante el cual le concedió la custodia legal de la menor a la Sra. Shuler, ello basado en una estipulación entre las partes, y sujeta tal custodia al derecho de visita que dicho foro judicial concedió al Sr. Shuler. Conjuntamente con tal decreto de custodia, el referido tribunal le impuso al demandante el pago de una pensión alimentaria *pendente lite* mensual por la cantidad de novecientos ochenta y tres dólares ($983.00) a favor de la Sra. Shuler y de la menor.

Alrededor de dos años después, para el 24 de enero de 1996, el demandante finalizó su término como militar activo, retirándose de las fuerzas armadas, efectivo dicho retiro

el 29 de febrero de 1996; su "status" como ex- miembro del Ejército cambió al de civil-retirado de las fuerza armadas.[1]

Así las cosas, durante el mes de febrero del año 2000, el demandante se mudó a Puerto Rico, estableciendo aquí su residencia y comenzando a trabajar para la firma Logistics Management Resources, Inc., donde fue contratado como "persona civil" ("civilian contractor"), encargado de la administración de sistemas de informática del Ejército del Comando Sur ubicado en el Fuerte Buchanan, Guaynabo, Puerto Rico. Desde entonces, el demandante reside en la Urb. Jardines de Caparra, Bayamón; obtuvo su licencia de conducir del Estado Libre Asociado de Puerto Rico; y radicó su Planilla de Contribución sobre Ingresos de Individuos correspondiente al año 2000.

Luego de haber residido en Puerto Rico por más de un año, el 6 de junio de 2001, James Shuler radicó, en el Tribunal de Primera Instancia, Sala Superior de Bayamón, demanda de divorcio por la causal de separación contra su esposa, Leone M. Shuler. Alegó, en síntesis, que ambos se encontraban separados de manera ininterrumpida desde el mes de agosto de 1991, cuando la demandada se negó a acompañarlo a sus tareas militares en Panamá. Adujo que ésta alegadamente le había expresado su interés de finalizar la relación matrimonial durante el mes de junio de 1993, y que no existía posibilidad de reconciliación alguna entre ambos. En la

---

[1] Tal hecho consta en el "Certificate of Release or Discharge from active duty", anejado al expediente de autos. Véase,

demanda, además, solicitó del foro de instancia que redujera la pensión alimentaria mensual de $983.00 dólares impuesta por el tribunal de Virginia a favor de la menor y de su esposa, y que fijara una de trescientos dólares ($300.00), únicamente a favor de la menor.

## I

Expuestos los hechos materiales pertinentes, procedemos a detallar el trámite procesal del caso de autos, por ser éste de particular relevancia a la correcta solución del mismo. Radicada la demanda el 6 de junio de 2001, el demandante compareció nuevamente ante el foro primario el 31 de julio del mismo año, en solicitud de que se le autorizara emplazar a la demandada mediante edicto ya que ésta no residía en Puerto Rico. El tribunal de instancia accedió a ello. A esos efectos, dicho foro ordenó la publicación del edicto correspondiente y que se cumpliera con los trámites dispuestos en la Regla 4.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.4.5, para notificar a la demandada de la radicación del pleito de autos a su última dirección conocida.

Por otra parte, el día 4 de septiembre de 2001, el demandante radicó moción en solicitud de que se le anotara la rebeldía a la demandada y se señalara vista a tales efectos. Luego de ello, el 26 de septiembre, radicó una moción en cumplimiento de orden informando al tribunal que,

Exhibit I, Apéndice a la Petición de Certiorari, pág. 133.

según le fuera ordenado, había llevado a cabo los trámites correspondientes con respecto al emplazamiento de la demandada, ello en estricto cumplimiento con las disposiciones legales pertinentes. Solicitó, además, del tribunal que señalara fecha para la celebración de la vista en su fondo.  En el entretanto, el 27 de septiembre, el tribunal emitió una orden mediante la cual le anotó la rebeldía a la Sra. Shuler, señalando vista en su fondo para el 22 de octubre de 2001. Dicha orden fue notificada a las partes el día 3 de octubre.

El 17 de octubre siguiente, la demandada compareció mediante escrito intitulado "Comparecencia Especial y Solicitud de Desestimación", especificando en el mismo que comparecía sin someterse a la jurisdicción del tribunal. Alegó que dicho foro carecía de jurisdicción tanto sobre su persona como sobre la persona del demandante, por lo que el tribunal no podía entender en el caso de epígrafe, solicitando la desestimación del mismo sin necesidad de ulteriores trámites procesales al respecto. Alegó que el demandante todavía era un domiciliado del Estado de Virginia, razón por la cual no podía ser considerado como residente de Puerto Rico como para poder entablar aquí una demanda de divorcio en su contra, según ello lo requiere y dispone el Artículo 97 del Código Civil, 31 L.P.R.A. sec. 331.

De otra parte, sostuvo que el tribunal de primera instancia no tenía jurisdicción sobre su persona; ello

debido a que era una demandada ausente de Puerto Rico, no era domiciliada de la Isla y carecía de contacto mínimo alguno con esta jurisdicción. En síntesis, alegó que no estaban presentes ninguna de las instancias establecidas por la Regla 4.7 de las de Procedimiento Civil, 32 L.P.R.A. Ap.III, R.4.7, mediante las cuales se puede adquirir jurisdicción en Puerto Rico sobre las personas ausentes de nuestro territorio. En apoyo de su contención adujo que nunca había vivido en Puerto Rico; que no posee inmuebles en la Isla; y que, tanto ella, como la menor procreada en el matrimonio, siempre han residido en el Estado de Virginia.

Ambas partes comparecieron a la "vista en rebeldía", previamente señalada por el tribunal, el día 22 de octubre siguiente.[2] Dicha vista fue, sin embargo, suspendida, con el propósito de brindarle al demandante un término razonable de tiempo para expresarse en cuanto a la solicitud de desestimación radicada por la demandada. El tribunal, no obstante, procedió a re-señalar la celebración de la vista de divorcio en su fondo para el día 13 de diciembre de 2001.

El 8 de noviembre siguiente, el demandante radicó su oposición a la solicitud de desestimación y, el 15 de noviembre, la parte demandada radicó la correspondiente réplica. Con el beneficio de tales comparecencias, el 3 de diciembre de 2001, el tribunal de primera instancia emitió

---

[2] La parte demandada, al comparecer, enfatizó que no podía entenderse, con tal comparecencia, que se estaba sometiendo a la jurisdicción del tribunal; ello debido a que previamente

orden mediante la cual <u>denegó</u> la solicitud de desestimación instada por la demandada. Sostuvo el tribunal, en la orden que a esos efectos emitiera, que tenía jurisdicción sobre la persona del demandante, debido a que éste radicó la demanda de divorcio luego de haber cumplido un año de residencia en Puerto Rico, ello en virtud de las disposiciones del Artículo 97, ante. A renglón seguido, determinó que tenía jurisdicción sobre la persona de la demandada pues el emplazamiento por edicto, correctamente dirigido y diligenciado en su contra, se la confirió.

Ambas partes comparecieron a la vista en su fondo del caso pautada para el 13 de diciembre de 2001. La demandada compareció haciendo la reserva de que no se estaba sometiendo a la jurisdicción del tribunal, solicitando se suspendiera la vista toda vez que estaba en trámites de decidir si revisaba la orden previamente emitida, y que, de participar activamente en la vista en los méritos, cualquier planteamiento jurisdiccional sobre su persona se tornaría académico. El tribunal accedió a tal solicitud, no sin antes imponerle una sanción económica de ciento veinticinco dólares ($125.00), ello mediante orden emitida en corte abierta. El tribunal procedió a señalar nuevamente vista en su fondo para el día 4 de febrero de 2002.

Inconforme, el 4 de enero de 2002 la parte demandada acudió, mediante recurso de apelación y moción en auxilio

---

objetó tal jurisdicción sobre su persona en la solicitud de desestimación radicada pocos días antes.

de jurisdicción, ante el Tribunal de Circuito de Apelaciones. Solicitó del tribunal apelativo intermedio que emitiera orden paralizando los procedimientos en instancia hasta tanto emitiera algún dictamen con respecto a la existencia, o no, de jurisdicción sobre su persona en el proceso de divorcio. Solicitó, además, se dejase sin efecto la vista pautada para el 4 de febrero y se revocara la orden respecto de la cual se le impuso la sanción económica. El foro apelativo accedió a ambas solicitudes y, el 10 de enero siguiente, expidió orden de mostrar causa por la cual no se debía expedir el auto radicado por la demandada y revocar la orden de instancia. El demandante compareció en cumplimiento de dicha orden.

El Tribunal de Circuito de Apelaciones emitió sentencia mediante la cual <u>confirmó</u> la orden recurrida en cuanto al planteamiento de índole jurisdiccional. [3] El tribunal apelativo determinó, <u>sin embargo</u>, que la jurisdicción del tribunal de primera instancia estaba <u>limitada</u> a la acción específica de divorcio. Sostuvo que dicho foro carece de autoridad para dilucidar las cuestiones relativas a la pensión alimentaria de la menor ya que tal autoridad corresponde exclusivamente a la jurisdicción del estado de Virginia, en vista de que fue en tal foro que la pensión,

---

[3] Dicho tribunal entendió innecesario atender el planteamiento sobre la imposición de la sanción económica pues la misma no constaba en ninguna resolución escrita, y la minuta en la cual podría aparecer tampoco fue incluida en el apéndice del recurso.

la cual el demandante solicita se rebaje, fue impuesta; ello, al haberse emitido allí una orden todavía vigente, siendo ese el estado residencia de la menor, y de conformidad con las disposiciones del Artículo 1, sec. 205(a)(1), (2) de la Ley Interestatal Uniforme de Alimentos entre Parientes, Ley Núm. 180 de 20 de diciembre de 1997, 8 L.P.R.A. sec. 542d.[4]

Inconforme con tal proceder, el 3 de mayo de 2002 la parte demandada acudió ante este Tribunal, vía recurso de certiorari y moción en auxilio de nuestra jurisdicción. Solicitó se paralizaran los procedimientos ante instancia, ello debido a la naturaleza jurisdiccional del planteamiento que había levantado ante ambos foros apelados. En su escrito, la peticionaria alega que el foro apelativo intermedio incidió al:

> "...confirmar la resolución del Tribunal de Primera Instancia notificada a las partes el 5 de diciembre de 2001, mediante la cual resolvieron ambos foros que el debido proceso de ley y la Regla 4.7 de Procedimiento Civil de Puerto Rico de 1979, según enmendadas, no son de aplicación a los casos de divorcio;
>
> ...al no resolver el segundo error planteado por la parte compareciente porque no existía una orden o resolución escrito del Tribunal de Primera Instancia que evidenciara lo alegado por la compareciente especial."

Mediante Resolución emitida ese mismo día, ordenamos la paralización de los procedimientos ante el tribunal de

---

[4] En vista de lo resuelto por el foro apelativo intermedio, el 1 de abril de 2002 el tribunal de instancia emitió una orden mediante la cual pautó la celebración de la vista de divorcio en su fondo para el lunes, 6 de mayo de 2002. Dicha orden fue notificada a las partes el 3 de abril.

instancia hasta que otra cosa dispusiéramos. Posteriormente, el 24 mayo de 2002, expedimos el auto. Resolvemos.


                                  II

De entrada, es menester advertir que la demandada de autos nunca ha cuestionado la procedencia o inadecuacidad del su emplazamiento por edicto como tal, notificándole del pleito en su contra, como tampoco que el mismo hubiera sido diligenciado incorrectamente. En virtud de ello, partimos de la premisa de que, en dicho emplazamiento, se cumplieron fielmente las disposiciones reglamentarias expuestas en la Regla 4.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 4.5, que regulan tal modo de notificación.

Aclarado lo anterior, procedemos a resolver la controversia medular ante nos; esto es, la facultad de los tribunales de Puerto Rico para ejercer jurisdicción sobre la persona de un demandado que no reside en Puerto Rico en un pleito de divorcio.

Sabido es que la cláusula del debido procedimiento de ley de la Constitución de los Estados Unidos limita la autoridad y el poder de los tribunales de los Estados, entre éstos Puerto Rico, para asumir jurisdicción y dictar sentencias contra personas naturales o jurídicas que no residen dentro de su territorio. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Kulko v. California Superior Court, 436 U.S. 84 (1978); Ind. Siderúrgica v. Thyssen, 114 D.P.R. 548 (1983). Es norma harto conocida la de que los tribunales deben ser celosos

guardianes del ejercicio de su jurisdicción y, sobre todo, la de que para poder ejercitar adecuada y válidamente tal autoridad judicial, debemos poseer jurisdicción sobre la materia y sobre las personas de los litigantes. **Alvarez Elvira v. Arias Ferrer**, ante; **Julia Padró v. Epifanio Vidal**, res. el 14 de febrero de 2001, 2001 TSPR 15.

Hemos sido fieles a la norma, establecida hace más de un siglo por el Tribunal Supremo de los Estados Unidos, de que con respecto a la jurisdicción de un tribunal sobre una persona, cada Estado posee jurisdicción y soberanía sobre los demandados siempre y cuando éstos estén domiciliados en el mismo o que, simplemente, estén dentro de sus límites territoriales. **Pennoyer v. Neff**, 95 U.S. 714 (1877); **Pequero v. Hernández Pellot**, 139 D.P.R. 487 (1995), entre otros.[5]

"Es regla general del Derecho que los tribunales de un Estado sólo pueden ejercer jurisdicción sobre las personas que residen dentro del territorio del Estado."[6] La función judicial de los tribunales, como parte del ejercicio del poder soberano del Estado, se circunscribe generalmente a personas presentes o bienes ubicados dentro de los límites territoriales del Estado. **Riego Zúñiga** v. **Líneas Aéreas**

---

[5] Véase, además, Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945); Kulko v. California Superior Court, 436 U.S. 84 (1978); World-Wide Volkswagen v. Woodson, 444 U.S. 286 (1980); Keeton v. Huslter Magazine, Inc. 465 U.S. 770 (1984).

[6] Rafael Hernández Colón, Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, San Juan: Michie of Puerto Rico, Inc., 1997, pág. 171.

Costarricenses, 139 D.P.R. 509 (1995). De tal manera está configurado el llamado principio de territorialidad.

Sabido es, además, que esta regla general sobre jurisdicción *in personam* tiene sus excepciones, De configurarse alguna de tales excepciones, los tribunales de un Estado, incluyendo Puerto Rico, pueden ejercer jurisdicción sobre la persona de un demandado no domiciliado, ausente de sus límites territoriales. El tribunal puede hacer efectiva tal jurisdicción mediante la notificación al demandado sobre la reclamación en su contra a través del emplazamiento personal en el lugar donde se encuentre ese demandado o a través del mecanismo procesal del emplazamiento por edicto; ello de estar presente, o darse, las condiciones requeridas por la Regla 4.5 de Procedimiento Civil, ante.

En cuanto a las excepciones mencionadas, hemos reconocido que los tribunales de Puerto Rico tienen jurisdicción sobre un no domiciliado cuando existe una sumisión expresa o tácita de su parte. Sterzinger v. Ramírez, 116 D.P.R. 762, 768 (1985). De conformidad con tal excepción, aquella parte que comparece voluntariamente, y realiza algún acto sustancial que la constituya parte en el pleito, se somete a la jurisdicción del tribunal. Qume Caribe, Inc. v. Sec. Hacienda, res. el 30 de marzo de 2001, 2001 TSPR 38; Márquez Resto v. Barreto, 143 D.P.R. 128 (1997); Mercado v. Panthers Military Society, 125 D.P.R. 98 (1990), entre otros. A manera de ejemplo, el demandado no domiciliado puede someterse expresamente a la jurisdicción del tribunal mediante comparecencia o,

tácitamente, cuando no plantee la ausencia de jurisdicción y presente otro tipo de alegaciones.[7]

Los tribunales de Puerto Rico tienen jurisdicción además, vía excepción, sobre las personas ausentes del Estado Libre Asociado, pero que, a pesar de ello, mantienen su domicilio aquí. Ello por razón de que la autoridad de cada Estado sobre sus ciudadanos, en acciones personales, no culmina por el simple hecho de que éstos se encuentren ausentes del mismo. A tales efectos advertimos que el propio Artículo 9 del Código Civil, 31 L.P.R.A. sec. 9, dispone que "las leyes relativas a los derechos y deberes de familia, o al estado, condición y capacidad legal de las personas, obligan a los ciudadanos de Puerto Rico, aunque residan en países extranjeros." Esta excepción es una un tanto obvia, pues, al desprenderse de la propia regla general que un tribunal no tiene jurisdicción sobre la persona de un no domiciliado, resulta pues evidente que sí la tiene sobre aquel domiciliado, esto es, aquel que mantiene su domicilio aquí aun cuando no esté físicamente presente.

La tercera excepción vigente en nuestro ordenamiento es producto de la decisión emitida por el Tribunal Supremo de los Estados Unidos en el caso International Shoe Co. v. Washington, 326 U.S. 310 (1945), y su progenie. Se trata de la "doctrina de los contactos mínimos". En el presente caso se reclama, por

---

[7] Sobre la referida excepción, véase: Molina v. Supermercados Amigo, Inc., 119 D.P.R. 330 (1987); Riego Zúñiga v. Líneas Aéreas Costarricenses, 139 D.P.R. 509 (1995); Peguero v.

la demandada, la aplicabilidad de tal doctrina. **Aun cuando, por los fundamentos que expondremos posteriormente, la misma no es de aplicación al presente caso, procedemos a expresar brevemente su desarrollo y aplicación en Puerto Rico**.

A tenor con lo resuelto por el máximo Foro federal en Int'l Shoe Co. v. Washington, ante, para que un tribunal esté facultado para ejercer su jurisdicción sobre la persona de un demandado no residente, no domiciliado, el debido proceso de ley requiere estrictamente que éste tenga o haya tenido "contactos mínimos" con el foro que pretende ejercer tal autoridad. Ello requiere, además, que la causa de acción ante la consideración del tribunal surja o esté relacionada con tales contactos, de suerte que el ejercicio de su jurisdicción no infrinja las nociones tradicionales del trato justo y de justicia sustancial enraizadas en el ordenamiento y principios constitucionales. Es preciso que los contactos surjan del demandado hacia el foro, de manera que se haya forjado una relación recíproca entre el demandado, el foro, y el litigio que está pendiente de resolución por el tribunal.

La doctrina de los "contactos mínimos" fue acogida por este Tribunal en el caso de A.H. Thomas Co. v. Tribunal Superior, 98 D.P.R. 883 (1970). Allí expusimos los criterios que, a nuestro entender, debían formar parte integral de nuestro ordenamiento procesal, a fin de que los tribunales tuvieran una guía más flexible a la hora de adjudicar y poder

---

Hernández Pellot, ante; Márquez Resto v. Barreto Lima, 143 D.P.R. 137 (1997).

**dictar válidamente sentencias en reclamaciones ante su consideración que envolvieran demandados no domiciliados, ausentes de Puerto Rico.**

**Al exponer la norma prevaleciente fijada por Int'l Shoe Co. v. Washington, ante, sostuvimos, y citamos, que "aun bajo la doctrina de los contactos mínimos se requiere que el contacto dentro de la jurisdicción resulte de un acto afirmativo de la parte demandada...es esencial en cada caso que concurra un acto de la parte demandada mediante el cual deliberadamente se aproveche de las ventajas que ofrece el foro, invocando así los beneficios y la protección que brindan las leyes de ese estado." A.H. Thomas, Co. v. Tribunal Superior, ante, a la pág. 889.[8]**

_____

[8] El Tribunal aprovechó la oportunidad y reseñó varias reglas adoptadas por otros tribunales derivadas de la opinión emitida en Int'l Shoe Co. v. Washington, ante, a saber:

1)   El demandado no residente debe realizar algún acto o consumar alguna transacción dentro del foro. No es necesario que la actividad se efectúe dentro del foro; el acto o transacción puede realizarse por correo. Un solo acto o transacción basta si sus efectos en el foro son suficientemente sustanciales para cualificar bajo la regla tercera.

2)   La causa de acción debe surgir o resultar de las actividades del demandado dentro del foro. Es concebible que la causa de acción precisa se plasme fuera del foro, pero debido a las actividades del demandado en el foro aún exista el 'contacto mínimo sustancial' que es necesario.

3)   Habiéndose establecido bajo las reglas precedentes un contacto mínimo entre el demandado y el foro, la asunción de jurisdicción fundada en ese contacto debe ser compatible con los principios de 'trato imparcial' y 'justicia sustancial' del debido procedimiento de ley. Si se satisface esta norma, existe un 'contacto mínimo sustancial' entre el foro y el demandado.

Es de notar que, posteriormente, en **World-Wide Volkswagen v. Woodson**, 444 U.S. 286 (1980), el Tribunal Supremo Federal sostuvo que la doctrina de los contactos mínimos tiene dos propósitos esenciales, i) proteger al demandado de la carga que supone litigar en un foro distante o inconveniente, y, ii) asegurar que los Estados, por medio de sus tribunales, no habrán de rebasar los límites que recaen sobre ellos por su condición de soberanos iguales entre sí en un sistema federal de gobierno. [9] Tal pronunciamiento fue acogido por este Tribunal en **Ind. Siderúrgica v. Thyssen**, ante.

De conformidad con tales expresiones jurisprudenciales y , según expusimos posteriormente en **Peguero v. Hernández Pellot**, ante, los estados comenzaron  a crear e implantar leyes para emplazar y poner en vigor la doctrina de los contactos mínimos. Estas se conocen comúnmente como los estatutos de largo alcance ("long arm statutes"). Así, en

---

La razonabilidad de someter al demandado a la jurisdicción se determina frecuentemente por las normas análogas a las de *forum non conveniens*. A.H. Thomas, Co. v. Tribunal Superior, ante, a la pág. 890.
4)

[9] Según citado en Peguero v. Hernández Pellot, ante, a la pág. 498, citando a su vez a Ind. Siderúrgica v. Thyssen, ante. Allí sostuvimos, y citamos, "la relación entre el demandado y el foro debe ser de tal naturaleza que sea razonable requerirle a éste que comparezca y se defienda de la acción principal incoada en dicho foro." Id., págs. 559-560.

"En los casos apropiados se considerará el interés del foro local en adjudicar el litigio; el interés del demandante en obtener un remedio conveniente y efectivo; el interés del sistema judicial interestatal en lograr la más eficiente resolución de las controversias;  y el interés compartido de los distintos Estados en promover políticas sociales

nuestra jurisdicción y ordenamiento, la doctrina de los contactos mínimos la encontramos estatutariamente recogida en la Regla 4.7 de las de Procedimiento Civil de Puerto Rico. 32 L.P.R.A. Ap.III, R.4.7.

La demandada en el pleito ante nuestra consideración alega que las disposiciones de la citada Regla 4.7, y a su vez, de la doctrina de los contactos mínimos son de aplicación al pleito de divorcio incoado en su contra. Alega además que, al no darse ninguna de las circunstancias o instancias allí dispuestas para que el tribunal pueda adquirir jurisdicción sobre su persona, éste carece de la misma. Habida cuenta de ello, alega que nunca ha vivido en Puerto Rico, no posee inmuebles en la Isla y que, tanto ella, como la hija menor de ambos, siempre han residido y mantenido su domicilio en el estado de Virginia. La demandada basa su posición en lo resuelto en Kulko v. California Superior Court, 436 U.S. 84 (1978), esto es, que aún en casos relativos al derecho de familia, el Tribunal Supremo federal ha resuelto que la situación se rige por la doctrina de los contactos mínimos.

De entrada, debe enfatizarse el hecho de que el referido caso versaba sobre una reclamación de custodia y alimentos de menores, luego de decretado un acuerdo de separación entre los cónyuges en el Estado de Nueva York; acuerdo mediante el cual se pactó que los niños permanecerían con el padre, y que, durante las vacaciones escolares estarían con la madre, a quien

---

fundamentales." Peguero v. Hernández Pellot, ante, a la pág. 499; Ind. Siderúrgica v. Thyssen, ante, a la pág. 560.

el marido le pagaría una pensión mientras los niños estuvieran con ella. Luego de emitido tal decreto, la esposa se trasladó y fijó su residencia en el estado de California y obtuvo el divorcio en Haití. Algún tiempo después, el padre envió a los dos hijos de la pareja con ella a California. Así las cosas, la madre instó, en California, reclamación para reconocer el divorcio obtenido en Haití, y para que se modificara el acuerdo de separación para obtener la custodia de los hijos y, se aumentara la referida pensión. El padre solicitó la desestimación del pleito y adujo que el tribunal de California no tenía jurisdicción sobre su persona, ello al él no tener contactos mínimos con dicho foro.

El Tribunal Supremo federal sostuvo que el hecho de que el demandado hubiera enviado a sus hijos al Estado de California no implicaba que se hubieran configurado las "transacciones de negocio" necesarias para que se configurase tal instancia como contacto mínimo con el foro. En virtud de ello, determinó que debía de cumplirse estrictamente con las exigencias de la doctrina de los contactos mínimos y del debido proceso de ley. Así, el Tribunal reforzó la doctrina, exigiendo una relación recíproca entre el demandado, el foro y el litigio envuelto, <u>extendiendo su aplicación a ciertos casos de derecho de familia</u>.

<u>No</u> puede perderse de vista, <u>sin embargo</u>, el hecho de que el caso de <u>Kulko</u> tuvo el efecto de limitar las posibilidades de adquirir jurisdicción sobre los no residentes <u>en los casos</u>

de custodia, alimentos, o división de bienes gananciales.
Dicho de otro modo, la doctrina de contactos mínimos es de
aplicación en acciones en las que se afecta el derecho
patrimonial del demandado ausente, el cual no puede ser privado
de su propiedad sin el debido proceso de ley.

Así se han aplicado, en nuestra jurisdicción, las
instancias recogidas en la Regla 4.7, ante, y los postulados
de contactos mínimos, en casos de familia, entiéndase custodia
y/o alimentos, en Medina v. Tribunal Superior, 104 D.P.R. 346
(1975), sobre demanda en concepto de alimentos adeudados; en
Perrón v. Corretjer-Perrón, 113 D.P.R. 593 (1982), sobre
modificación de decreto de custodia, entre otros.

Ahora bien, ¿cuál debe ser la norma respecto al estado
civil de la parte demandante en casos tales como divorcio y
acciones de filiación? Es en cuanto a acciones de tal
naturaleza, que precisamente se encuentra plasmada la cuarta
excepción al principio de territorialidad de la jurisdicción
*in personam* sobre demandados ausentes no domiciliados. A esos
fines, nos ilustra el Lcdo. Rafael Hernández Colón, sobre que,
dentro de las excepciones a la regla de que un Estado sólo puede
ejercer jurisdicción sobre las personas que residen dentro del
territorio, se encuentran ciertas acciones personales,
relativas al status civil, tales como, el divorcio y la
filiación.[10] Sobre ello reseña, además, el Dr. José A. Cuevas
Segarra, y citamos, "desde 1913, se ha resuelto en Puerto Rico

---

[10] Rafael Hernández Colón, Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, ante, pág. 171.

que  nuestros tribunales tienen jurisdicción sobre la persona

de un no residente en los casos en que esté en controversia

el status personal del demandante."[11] A manera de ejemplo, éste

menciona el divorcio y la filiación.

Somos de igual criterio; esto es, entendemos que, no

obstante el desarrollo de la doctrina de los contactos mínimos,

siguen vigentes en nuestro ordenamiento las decisiones

emitidas por este Tribunal en los casos de Orama v. Oyanguren,

19 D.P.R. 828 (1913); Fordham v. Marrero, 27 D.P.R. 708 (1919)

y Barletta v. Tribunal Superior, 74 D.P.R. 460 (1953).

En Orama, pleito de filiación, expresamos en lo

pertinente que:

> "La acción que al hijo corresponde para hacer
> declarar en virtud de pruebas quién sea su padre
> natural, es sin duda alguna un derecho personal suyo
> y, por consiguiente, cuando el hijo está en posesión
> de tal derecho, debe ser regulado conforme a la ley
> bajo la cual fue adquirido, por lo que las cuestiones
> que conciernen el estado de la persona deben regirse
> por la ley del Estado de quien lo reclama. El estado
> civil de los ciudadanos debe regirse en todo por la
> ley de su país y sólo puede determinarse con arreglo
> a ella. En consecuencia, si bien es regla general que
> una corte no adquiere jurisdicción sobre personas no
> residentes por acciones personales, a menos que hayan
> sido notificadas personalmente de la demanda dentro
> del Estado o que en éste tenga bienes embargados, sin
> embargo, tal regla general no puede ser aplicada a
> los casos que se refieren al estado civil de la
> persona, cuyo carácter tiene la demanda de filiación,
> ya que siendo un derecho originado por la concepción
> y el nacimiento, no puede quedar a merced de que la
> persona a quien se atribuye la paternidad, o los
> representantes legales de su personalidad, se hayan
> ausentado del territorio de la persona con derecho
> al reconocimiento, dado que no en todos los países

---

[11] José A. Cuevas Segarra, Tratado de Derecho Procesal Civil,
Tomo I, San Juan: Publicaciones JTS, 2000, a la pág. 90.

tal derecho es reconocido, ni admiten pruebas de reconocimiento."[12] (Énfasis suplido).

Varias décadas después, al resolver Barletta v. Tribunal Superior, ante, reafirmamos lo dicho en Orama, e indicamos que la regla relativa a la necesidad de notificación personal de una persona domiciliada fuera del país, como condición jurisdiccional, no es aplicable a una acción que envuelva el status civil de una persona. En el referido caso de Barletta, ante, a la pág. 463, indicamos que: "la jurisdicción que un Estado posee para determinar el status civil y capacidades de sus habitantes, envuelve autoridad para prescribir las condiciones en que pueden iniciarse y proseguirse dentro del territorio de dicho Estado los procedimientos relativos al status civil y capacidades de sus habitantes." A renglón seguido expusimos, citando nuevamente a Pennoyer v. Neff, ante, que el Estado, por ejemplo, tiene derecho absoluto para prescribir las condiciones en que ha de basarse la relación matrimonial entre sus propios ciudadanos y las causas por las cuales puede disolverse el matrimonio. A tenor con ello, reseñamos el supuesto de que, una parte culpable de actos que bajo las leyes del Estado autorizan la disolución del vínculo matrimonial, podría trasladarse a otro Estado donde no sea posible obtener el divorcio. "En tal caso, la parte agraviada no podría reclamar sus derechos en el Estado adonde se trasladó la otra parte, y si no estuviese autorizado para promover la acción en los tribunales de su propio domicilio,

---

[12] Orama v. Oyanguren, ante, a la pág. 831.

sin notificar personalmente a la parte ofensora, el agravio quedaría sin reparación." Barletta v. Tribunal Superior, ante, a la pág. 464.

En resumen, examinados los contornos y la existencia, en nuestro ordenamiento, de varias excepciones al principio de territorialidad, las cuales hemos expuesto, concluimos que aquélla regida por la Regla 4.7 de Procedimiento Civil, que recoge los contactos mínimos que puede tener un demandado ausente con este foro, es una excepción separada y distinta de la que trata sobre las reclamaciones que envuelven el status civil de un residente domiciliado en nuestro territorio. De conformidad con ello, y con el ordenamiento vigente, el demandante en el caso de autos tiene capacidad para entablar su demanda de divorcio en nuestros tribunales, ello al darse las condiciones requeridas por el Artículo 97 del Código Civil[13], ante, por lo que el tribunal de instancia tiene facultad para adjudicar la petición de divorcio ante su consideración. Al así hacerlo, dicho foro viene en la obligación de aplicar todas aquellas disposiciones referentes al proceso de disolución del vínculo matrimonial vigentes en nuestro ordenamiento. Véase Artículo 96 del Código Civil, 31 L.P.R.A. sec. 321, entre otras.

---

[13] Dispone, en lo pertinente, el citado artículo de ley:

Ninguna persona podrá obtener el divorcio de acuerdo con este título, que no haya residido en el Estado Libre Asociado un año inmediatamente antes de hacer la demanda, a menos que la causa en que se funde se cometiera en Puerto Rico, o cuando uno de los cónyuges residiese aquí.

III

No podemos terminar sin antes indicar --al igual que lo hizo el Tribunal de Circuito de Apelaciones-- que aquella parte de la acción del demandante, referente a los alimentos y/o a la custodia de menores, <u>se rige por unos parámetros distintos de aquélla que simplemente declara sobre el estado civil de la parte demandante</u>. Tal diferencia cobra vigencia dada la promulgación y adopción de ciertos estatutos uniformes interestales que rigen el contorno de ambas reclamaciones respectivamente; éstas son, la Parental Kidnapping Prevention Act (P.K.P.A.), 28 U.S.C.A. sec. 1738 *et seq.*, la Uniform Reciprocal Enforcement Support Act (U.R.E.S.A.), según ésta aparece publicada en 32 L.P.R.A. sec. 3311 *et seq.*, y la Ley Interestatal Uniforme de Alimentos entre Parientes (L.I.U.A.P.), Ley Núm. 180 de 20 de diciembre de 1997, 8 L.P.R.A. sec. 541 *et seq.* Veamos.

A medida que ha ido evolucionado el derecho de familia, en especial las instituciones relativas a la custodia y a los alimentos, tanto el Congreso de los Estados Unidos como los Estados, se han dado a la tarea de  promulgar, a manera de ejemplo y en lo pertinente al caso de autos,  estatutos, con el propósito de viabilizar el reclamo de alimentos entre parientes. Ello con el objetivo de que se mantenga cierta uniformidad cuando un estado de la Unión ha emitido una orden de proveer alimentos que se pretende revisar por otro, incluyendo a Puerto Rico.

De conformidad con tales propósitos, el Artículo 1, sec. 2.205 de la L.I.U.A.P., 8 L.P.R.A. sec. 542d, dispone que cuando un tribunal emite una orden de pensión alimentaria, éste mantendrá jurisdicción continua y exclusiva sobre dicha orden. A tenor del referido artículo de ley, un tribunal de Puerto Rico podrá modificar una orden de pensión emitida por otro estado, siempre y cuando no sea aplicable la sección 6.613 del mismo, 8 L.P.R.A. sec. 547d, y, luego de cumplir con el requisito de notificación y vista, ese tribunal determine que:

"(1) Los siguientes requisitos se han cumplido:

(A) El menor, el alimentista y el alimentante no residen en el estado que remite la orden;
(B) el peticionario, quien no es residente de Puerto Rico, solicita que se modifique la orden, y
(C) el demandado está sujeto a la jurisdicción del tribunal de Puerto Rico; ó
(2) el menor o una de las partes está sujeto a la jurisdicción sobre la persona del tribunal de Puerto Rico y todas las partes han presentado por escrito su consentimiento en el estado que emitió la orden para que el tribunal de Puerto Rico pueda modificar la orden de pensión alimentaria y asumir jurisdicción continua y exclusiva sobre la misma...".

De no cumplirse con los requisitos de la disposición antes citada, los tribunales de Puerto Rico carecerán de jurisdicción para modificar la orden de pensión alimentaria emitida por otro estado. Por consiguiente, de una mera apreciación de los hechos del caso de autos, podemos concluir que el tribunal de instancia no ostenta facultad en ley para acceder a la petición del demandante de rebajar la pensión originalmente emitida por el tribunal de Virginia. No podemos perder de perspectiva que dicha orden se encuentra vigente hoy

día y que Virginia sigue siendo el estado residencia de la menor, Victoria Anne Marie Shuler.

En mérito de lo antes expuesto, confirmamos, en todos sus aspectos, la sentencia emitida por el Tribunal de Circuito de Apelaciones en el presente caso. Al así concluir, resolvemos que el Tribunal de Primera Instancia tiene jurisdicción para adjudicar la petición de divorcio, por la causal de separación, del demandante y declarar sobre su futuro status civil. No tiene, sin embargo, tal autoridad, para modificar la orden de pensión alimentaria.

Ello no obstante, al devolver el caso al foro de instancia instruimos a éste para que le provea a la parte demandada la oportunidad: de comparecer dentro del término reglamentario dispuesto por las Reglas de Procedimiento Civil; contestar la demanda interpuesta en su contra; y para oponer cualquier defensa que estime pertinente presentar en cuanto a los méritos del caso se trate. De esa manera, se cumplen fielmente la exigencias del debido proceso de ley, en su vertiente procesal. No podemos pasar por alto y obviar que, desde un principio, los trámites del presente caso giraron en torno al planteamiento de índole jurisdiccional levantado por la demandada. De manera pues que erró el Tribunal de Primera Instancia al señalar la celebración de la vista de divorcio en su fondo. Por entender que dicho foro erró, de igual modo, al imponerle la sanción económica a la demandada, revocamos la misma.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LOPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

James D. Shuler

    Demandante-recurrido

       vs.                CC-2002-352      CERTIORARI

Leone M. Shuler

    Demandada-peticionaria

SENTENCIA

San Juan, Puerto Rico, a 19 de agosto de 2002

**Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones.**

**Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García no intervino.**

**Patricia Otón Olivieri**
**Secretaria del Tribunal Supremo**