| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL IX | | |
|---|---|---|
| HERMÉS ANTONIO AÑAZCO; ANGÉLICA AÑAZCO<br><br>Apelantes<br><br>V.<br><br>PR YACHT GROUP, LLC; MARTÍN LÓPEZ; MAREMI DEL CARMEN COSTAS TORRES Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS<br><br>Apelantes<br><br>V.<br><br>RICK OBEY; NEW BUILDS OF AMERICA, INC.; FULANO DE TAL; MENGANO DE TAL; COMPAÑÍA XYZ<br><br>Apelados | KLAN202401144 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>CT2023CV00066<br><br>Sobre:<br>Cobro de dinero |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de marzo de 2025.

Comparecen ante nos el señor Hermes Antonio Añazco, la señora Angélica Añazco, la Sociedad Legal de Gananciales compuesta por ambos (matrimonio Añazco), así como PR Yacht Group, LLC (PR Yacht), el señor Martín López Garay, la señora Maremi del Carmen Costas Torres y la Sociedad Legal de Gananciales compuesta por ambos (matrimonio López-Costas) (en conjunto, apelantes). Solicitan que revisemos una *Sentencia parcial* emitida el 15 de noviembre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Bayamón

(TPI o Foro Primario).[1] En dicha determinación, el Foro Primario declaró Con Lugar la solicitud de desestimación de la *Demanda contra tercero* presentada por Rick Obey (señor Obey) y New Builds of America, Inc. (NBA) (en conjunto, apelados) por falta de contactos mínimos para adquirir jurisdicción sobre sus personas.

Por los fundamentos que expondremos a continuación, se revoca la determinación recurrida en torno a que el foro carecía de jurisdicción sobre la persona del señor Obey y NBA por falta de contactos mínimos con el foro, así como en la desestimación de la *Demanda contra tercero* en contra los apelados y la eliminación de la *Moción sobre otra del tercero demandado y presentando documentos pertinentes* que presentó el matrimonio Añazco.

Veamos el trasfondo fáctico y procesal que sostiene nuestra determinación.

## I.

El caso ante nuestra consideración tuvo su origen el 9 de mayo de 2023, cuando el señor Añazco presentó una *Demanda* contra PR Yacht y el matrimonio López-Costas.[2] En síntesis, alegó que el 5 de diciembre de 2022, suscribió un contrato con PR Yacht, compañía operada por el matrimonio López-Costas, para comprar un yate Astondoa 677 2024 de fabricación española. Sostuvo que el 11 de agosto de 2022, depositó $500,000.00 a la cuenta de PR Yacht y, el 1 de diciembre de 2022, realizó una transferencia cablegráfica o *wire transfer* por $608,420.00.

No obstante, el señor Añazco arguyó que PR Yacht incumplió con el contrato. Señaló que, si bien PR Yacht realizó gestiones para adquirir el yate con el señor Obey, un distribuidor ubicado en el estado de Florida, este canceló el contrato el 11 de enero de 2023.

---

[1] Apéndice de *Escrito de Apelación*, Anejo 24, págs. 180-192. Archivada y notificada el 20 de noviembre de 2024.
[2] *Íd.*, Anejo 1, págs. 1-3.

Ante ello, adujo que el 8 de marzo de 2023, PR Yacht manifestó que le devolvería el depósito inicial de $500,000.00, lo cual se hizo efectivo el 17 de marzo y el 4 de abril de 2023. Sin embargo, el señor Añazco esgrimió que PR Yacht no devolvió el segundo depósito de $608,420.00 que se comprometió a entregar. Por ello, planteó que el monto pendiente constituía una deuda líquida y exigible, por lo que solicitó la devolución del depósito restante junto con los intereses devengados desde el 11 de enero de 2023.

El 11 de julio de 2023, PR Yacht presentó una *Demanda contra tercero* contra el señor Obey y NBA.[3] En esta, argumentó que los apelados eran los representantes de venta de Astondoa que estaban autorizados a realizar negocios en Puerto Rico. De esta manera, precisó que el 21 de octubre de 2022, PR Yacht y NBA suscribieron un contrato de compraventa de una embarcación por la suma de $3,050,000.00, pagadero de la siguiente forma: $2,200,000.00 al firmar el contrato y $850,000.00 al entregar el yate en España. Asimismo, PR Yacht específico que el señor Añazco iba a adquirir dicha embarcación. Apuntó que el 1 de diciembre de 2022, el señor Añazco le transfirió $608,420.00 que PR Yacht remitió al siguiente día a NBA. A su vez, manifestó que el 11 de enero de 2023, el señor Obey y NBA terminaron el contrato debido a la falta de pago de $2,200,000.00, según se estipuló. Sin embargo, destacó que los apelados se negaron a entregar la suma de $608,420.00 por unos alegados daños líquidos ante un eventual incumplimiento. PR Yacht pormenorizó que dicha retención era contraria a derecho por ser ambigua. Pese a lo anterior, sostuvo que de proceder alguna retención en virtud de la cláusula penal, dicha cantidad debía ser moderada por *fiat judicial* en virtud del Artículo 1257 del Código Civil,

---

[3] *Íd.*, Anejo 2, págs. 4-7.

31 LPRA sec. 9832. Por ello, reclamó la devolución del dinero, junto con los intereses devengados.

En igual fecha, PR Yacht y el matrimonio López-Costas contestaron la *Demanda*.[4] Mediante esta, alegaron que el señor Añazco no podía exigir el cumplimiento de una obligación recíproca cuando se encontraba en violación de sus propias obligaciones contractuales. Esto, al exponer que en agosto de 2022, el señor Añazco acordó la compra del yate por $2,895,703.25, pagaderos de la siguiente forma: un primer pago de $500,000.00 en o antes del 11 de agosto de 2022, un segundo pago de $2,200,000.00 en o antes del 21 de octubre de 2022 y el pago del balance restantes al momento de entregarse la embarcación. Subrayaron que, en vista de que el señor Añazco no emitió el pago de $2,200,000.00 en o antes del 21 de octubre de 2022, el señor Obey canceló el contrato de compraventa por falta de pago. Sobre el particular, concretaron que el señor Añazco tenía conocimiento de que el contrato entre las partes estaba subordinado a un contrato de compraventa entre PR Yacht y el señor Obey. Por último, incorporaron una reconvención al aducir que sufrieron daños ascendentes a $400,000.00, como consecuencia del incumplimiento del señor Añazco.

El 12 de julio de 2023, PR Yacht y el matrimonio López-Costas presentaron una *Contestación enmendada a la Demanda*.[5] En esta, indicaron que el contrato de compraventa entre PR Yacht y el señor Añazco se perfeccionó el 11 de agosto de 2022. Subrayaron que dicho contrato quedó subordinado al contrato de compraventa entre PR Yacht, el señor Obey y NBA, el cual fue firmado el 21 de octubre de 2022. Alegaron que el señor Añazco tenía conocimiento y se obligó a cumplir con las exigencias del contrato entre PR Yacht, el señor Obey y NBA, en el cual se estipuló un pago de $2,200,000.00 para el 21 de

---

[4] *Íd.*, Anejo 3, págs. 8-11.
[5] *Íd.*, Anejo 5, págs. 15-20.

octubre de 2022. No obstante, acentuaron que el señor Añazco incumplió con el contrato alcanzado con PR Yacht al no entregar la suma de $2,200,000.00 para el 21 de octubre de 2022. Por tal falta de pago, aseveraron que el señor Obey canceló el contrato el 11 de enero de 2023, tras recibir la suma de $608,420.00 que se niega a devolver y que es objeto de la *Demanda*.

El 19 de octubre de 2023, PR Yacht presentó una *Demanda contra tercero enmendada* contra los apelados.[6] Entre sus alegaciones, incorporó que el señor Obey y NBA eran los representantes exclusivos de venta de yates Astondoa en Puerto Rico a partir de agosto de 2022. Por cuanto, señaló que los apelados se beneficiaron de las leyes de Puerto Rico para llevar a cabo sus negocios como:

1) Nombrando y empleando representantes de venta en Puerto Rico.
2) Mercadeando y anunciando la línea de yates Astondoa en Puerto Rico.
3) Participando en "Boat Shows" llevados a cabo en Puerto Rico para promover la venta de yates Astondoa, y atendiendo residentes de Puerto Rico que se trasladan a "Boat Shows" en el estado de la Florida, que muestran interés en adquirir yates Astondoa para utilizarlos en Puerto Rico.
4) Llevando a cabo negocios de compra y venta de embarcaciones en Puerto Rico.
5) Recibiendo pagos de personas localizadas en Puerto Rico, en concepto de depósitos y otros pagos hacia el precio de compraventa de embarcaciones a ser muelladas y utilizadas en Puerto Rico de forma permanente.
6) Dominando y controlando la cadena de distribución de yates Astondoa en Puerto Rico, lo cual incluye entregando tales yates en puertos seguros localizados en Puerto Rico.
7) Consumando transacciones dentro de este foro.
8) Manteniendo presencia física en Puerto Rico a través de terceros.

El 9 de noviembre de 2023, el señor Obey y NBA presentaron una *Comparecencia especial solicitando desestimación bajo la Regla 10.2 y otros extremos*.[7] En resumen, esbozaron que carecían de los contactos mínimos como personas no domiciliadas en la jurisdicción de Puerto Rico, por lo que procedía la desestimación de la causa de

---

[6] *Íd.*, Anejo 11, págs. 28-31.
[7] *Íd.*, Anejo 12, págs. 32-55.

acción en su contra por virtud de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2. Esto, al alegar lo siguiente:

1) La Demanda en este caso está basada en un contrato entre la parte demandante y el codemandado PR Yacht. [...]
2) Los Terceros Demandados no son parte en el contrato entre la parte demandante y PR Yacht. [...]
3) El 31 de octubre de 2022, PR Yacht y el co-Tercero-Demandado New Builds firmaron un contrato titulado "New Yacht Purchase Agreement". [...]
4) La Demanda Contra Tercero Enmendada está basada en dicho Contrato.
5) El co-Tercero Demandado Obey no es parte del Contrato entre PR Yacht y New Builds. [...]
6) El Contrato fue suscrito por Obey en su carácter de Presidente de New Builds. [...]
7) Obey reside en Boca Ratón, Florida. [...]
8) Obey no reside ni ha estado en Puerto Rico en al menos los últimos diez (10) años. [...]
9) Obey no tiene relación personal alguna con PR. [...]
10) Obey no tiene relación alguna con Astilleros Astondoa, S.A., en su carácter personal. [...]
11) Obey es el Presidente de New Builds. [...]
12) New Builds es una corporación creada bajo las leyes del estado de Delaware con oficinas y lugar principal de negocios en Boca Ratón, Florida. [...]
13) New Builds nunca ha realizado negocios en Puerto Rico, incluyendo lo siguiente:
    a) Nunca ha tenido una oficina ni un número de teléfono en Puerto Rico;
    b) Nunca ha tenido una cuenta de banco en Puerto Rico;
    c) Nunca ha tenido vendedores ni representantes de venta en Puerto Rico;
    d) Nunca ha entregado un yate en Puerto Rico;
    e) Nunca se ha anunciado en Puerto Rico;
    f) Nunca ha presentado documentación para solicitar ni ha sido autorizada a hacer negocios en Puerto Rico;
    g) Nunca ha mercadeado los yates Astondoa en Puerto Rico;
    h) Nunca ha participado en "boat shows" en Puerto Rico;
    i) Nunca ha vendido un bote en Puerto Rico;
    j) Nunca ha poseído ni arrendado una propiedad en Puerto Rico.
14) El Contrato entre PR Yacht y New Builds era un contrato para la compraventa de un yate Astondoa que se iba a construir a cambio del precio acordado de $3,050,000. [...]
15) El yate iba a ser construido por la compañías Astilleros Astondoa en España. [...]
16) El Contrato estipulaba que el yate se entregaría en Santa Pola, España, y de allí se embarcaba a la ciudad de St. Thomas, U.S. Virgin Islands. Puerto Rico no se menciona en ninguna parte del Contrato. [...]
17) El Contrato estipulaba que con la firma del mismo se entregaría un depósito de $2,200,000.00, quedando un balance a pagar de $850,000.00. [...]
18) Posterior a la firma del Contrato, PR Yacht envió a New Builds un depósito de $608,364.00 mediante transferencia bancaria electrónica, cantidad menor al depósito acordado de $2,200,000.00, y nunca envió ninguna otra cantidad. [...]
19) El Contrato se dio por resuelto entre las partes como consecuencia de la falta de pago de la cantidad total del depósito estipulado en el Contrato. [...]

20) El Contrato estipulaba que "In the event that the Purchaser fails to perform any of his financial obligations under this agreement, deposits paid shall be retained by the Seller as damages". [...]

21) New Builds nunca acudió a PR Yacht a solicitar realizar negocios, sino que PR Yacht contactó a New Builds en Florida. [...]

22) El Contrato dispone que en términos de jurisdicción está sujeto a la jurisdicción del estado de Florida. [...[

A tenor con lo anterior, sostuvieron que no realizaron actos afirmativos que demostraran que se aprovecharon del foro. Además, alegaron que ser representantes de los yates Astondoa en el territorio de Puerto Rico no significó que se llevaron a cabo negocios en la Isla ni un acto afirmativo dentro del territorio para vender el yate. Por otro lado, arguyeron que el señor Obey no debía ser responsable de PR Yacht en su carácter personal, ya que siempre actuó en representación de NBA en su carácter de Presidente de la corporación.

En la alternativa, el señor Obey y NBA plantearon que el caso debía desestimarse, en vista de que el resultado de la *Demanda contra tercero* no dependía del desenlace de la *Demanda* original. Los apelados entendían que de las alegaciones no se desprendía que eran responsables de la reclamación del señor Añazco contra PR Yacht y el matrimonio López-Costas.

El 14 de noviembre de 2023, se presentó una *Demanda enmendada* a los fines de añadir a la señora Añazco y la Sociedad Legal de Gananciales como parte demandante.[8]

El 30 de enero de 2024, PR Yacht presentó una *Oposición a moción de desestimación de los terceros demandados por alegada falta de contactos mínimos.*[9] En esencia, arguyó que el señor Obey tenía contactos mayores a los mínimos con la jurisdicción de Puerto Rico. Lo anterior, al plantear que la prueba sometida por las partes demostraba que el señor Obey era el agente de ventas exclusivo

---

[8] *Íd.*, Anejo 2, págs. 4-7.
[9] *Íd.*, Anejo 14, págs. 88-110.

autorizado por Astilleros Astondoa, S.A. para la región de Puerto Rico. Por virtud de lo anterior, PR Yacht esbozó que el señor Obey suscribió un contrato de compraventa para una embarcación reservada para el señor Añazco, acción que los apelados pudieron realizar mediante sus privilegios como representantes exclusivos de venta en Puerto Rico y sus exigencias de que PR Yacht se abstuviera de mercadear las embarcaciones Astondoa en Puerto Rico. Por ello, argumentó que existía una relación entre la *Demanda* original y la *Demanda contra tercero.*

Amparándose en unas declaraciones juradas del señor Añazco y de PR Yacht, dicha compañía aseveró que los representantes de Astillero Astondoa le indicaron al señor Añazco que el negocio de la embarcación debía conducirse a través del señor Obey por ser el distribuidor de embarcaciones Astondoa en Puerto Rico. Asimismo, presentó una declaración jurada del señor López Garay, quien aseguró que los representantes de Astondoa le indicaron en septiembre de 2022 que el señor Obey era el representante exclusivo de ventas en Puerto Rico. Esto, a través del mercadeo de su agente IMS Yachts, localizado en el 200 Ave A, Suite #9 del Villa Marina Shopping Center en Fajardo, Puerto Rico.

Adicionalmente, particularizó que el señor López Garay juró que el 9 de marzo de 2023, el señor Obey le envió un *Settlement and Release Agreement*, en el que admitió que era el representante exclusivo de ventas de las embarcaciones Astondoa en Puerto Rico. PR Yacht especificó que el referido documento contenía un espacio para el señor Obey firmar en su capacidad personal, así como NBA.

Sobre lo anterior, PR Yacht reiteró que el hecho del señor Obey era el representante exclusivo de ventas de las embarcaciones Astondoa en Puerto Rico constituía un contacto mucho mayor que el mínimo por tener el potencial de generar ventas a favor de clientes residentes del foro y llevar a cabo negocios de distribución que

estaban protegidos. Esto, al comprender que se trataba de un representante de ventas autorizado y protegido por la *Ley de contratos de distribución de Puerto Rico*, Ley Núm. 75 del 24 de junio de 1964, según enmendada, 10 LPRA sec. 278 *et seq.*

Con relación a la procedencia de la *Demanda contra tercero*, PR Yacht puntualizó que el pleito versó sobre una reclamación de $608,420.00 que se mantenían en el patrimonio del señor Obey y que el TPI podía requerir la devolución del dinero.

El 2 de febrero de 2024, el señor Obey y NBA presentaron una *Comparecencia especial solicitando: (A) reconsideración, (B) moción bajo la Regla 10.5, y (C) solicitud de término para replicar a oposición del demandante contra tercero.*[10] Entre otros, solicitaron eliminar del récord las alegaciones relacionadas con el borrador del *Settlement and Release Agreement* por ser inadmisible a tenor con la Regla 408 de Evidencia, 32 LPRA Ap. VI, R. 408, al versar sobre gestiones dirigidas a una transacción. A su vez, peticionaron el desglose de la oposición a la desestimación y sus exhibits.

El 6 de febrero de 2024, PR Yacht presentó una *Moción aclaratoria en torno a prueba ofrecida y en oposición a desglose de prueba.*[11] En esta, sostuvo que el propósito de incluir el *Settlement and Release Agreement* era demostrar que los apelados admitieron ser los representantes exclusivos de ventas de Astondoa en Puerto Rico y que su intención era excluir a cualquier persona que quisiera vender yates Astondoa en Puerto Rico. Por tal motivo, aseveró que tales admisiones eran pertinentes y admisibles bajo las Regla 401 de Evidencia, *supra,* R. 401. Esto, al hacer más probable el hecho en controversia, el cual versaba en si los apelados tenían contactos mínimos con el foro. De esta manera, manifestó que los apelados no tenían razón al aludir que el *Settlement and Release Agreement* debía

---

[10] *Íd.,* Anejo 15, págs. 111-112.
[11] *Íd.,* Anejo 16, págs. 113-115.

excluirse por virtud de la Regla 408 de Evidencia, *supra*, R. 408. Por ello, indicó que no procedía el desglose de la oposición a la desestimación.

En igual fecha, el señor Obey y NBA presentaron una *Comparecencia especial en réplica a moción aclaratoria.*[12] Mediante esta, subrayaron que, independientemente el propósito por el cual PR Yacht presentó el *Settlement and Release Agreement*, era inadmisible por ser un borrador dentro del contexto de una negociación para alcanzar una transacción. En tal virtud, arguyó que ignorar el contexto donde se dieron las admisiones no hacía que el documento fuese admisible, ya que se intentó utilizar para impugnar declaraciones alegadamente inconsistentes, lo cual resultaba incompatible con la Regla 408 de Evidencia, *supra*, R. 408.

El 26 de febrero de 2024, el señor Obey y NBA presentaron una *Comparecencia especial en réplica a "oposición a moción de desestimación de los terceros demandados".*[13] Señalaron que no existía evidencia de contacto alguno de NBA con la jurisdicción de Puerto Rico al no ser residente, no realizar negocios, ni actos afirmativos en el foro. En lo atinente al señor Obey, plantearon que las alegaciones de PR Yacht para establecer los contactos mínimos con el foro constituyeron prueba de referencia insuficiente. A su vez, alegaron que PR Yacht se fundamentó en el *Settlement and Release Agreement*, el cual era un simple borrador que no contaba con la firma de las partes y que formó parte de las comunicaciones dentro de una negociación de una transacción, excluido por la Regla 408 de Evidencia, *supra*, R. 408. Por otra parte, indicaron que la *Demanda contra tercero* no procedía, en vista de que no existía un entronque común, ya que no tenían relación con el señor Añazco ni eran responsables por el incumplimiento de contrato de PR Yacht.

---

[12] *Íd.*, Anejo 17, págs. 116-117.
[13] *Íd.*, Anejo 18, págs. 118-123.

El 1 de marzo de 2024, el matrimonio Añazco presentó una *Moción sobre otra del tercero demandado y presentando documentos pertinentes*.[14] En su virtud, esgrimió que tenía interés en la *Demanda contra tercero*, ya que el récord reflejó que el señor Obey estaba en posesión de los $608,420.00 que le pertenecían. Igualmente, expresó que no le asistía la razón al señor Obey al establecer que nunca realizó negocios o tuvo conexión con Puerto Rico, puesto que PR Yacht evidenció que se representó como un distribuidor de yates en Puerto Rico y que no existía controversia en que firmó un contrato con PR Yacht para vender un yate Astondoa que iba a ser entregado al señor Añazco. Con esto, acentuó que el señor Obey realizó un negocio con un residente de Puerto Rico para la venta de un yate que iba a ser entregado a otro residente de la Isla. Asimismo, precisó que el *Settlement and Release Agreement* preparado por el señor Obey reflejó que conocía que el dinero del depósito se devolvería al señor Añazco. Por ello, adujo que contrario a lo alegado por los apelados, dicho documento era admisible para establecer que el señor Obey conocían que el dinero que estaba reteniendo le pertenecía al señor Añazco, quien era un residente de Puerto Rico.

Por otro lado, el matrimonio Añazco alegó que el señor Obey estaba consciente de que la embarcación que estaba vendiendo se iba a entregar en Puerto Rico. Además, resaltó que los oficiales de Astondoa le representaron que el señor Obey era el distribuidor autorizado de la empresa en Puerto Rico. A raíz de lo anterior, manifestó que el 31 de octubre de 2022, el señor Obey le indicó a PR Yacht que le vendería el yate al señor Añazco. Asimismo, relató que el señor Obey preparó un borrador de contrato a nombre del señor Añazco. Adicionalmente, arguyó que el 9 de noviembre de 2022, el señor Obey envió a PR Yacht un borrador del documento titulado

---

[14] *Íd.*, Anejo 20, págs. 128-158.

*Commission Agreement*, en el que se contemplaba que PR Yacht recibiría una comisión de $152,500.00 al cerrarse el negocio. Indicó que, sucesivamente, el 31 de enero de 2023, el señor Obey le escribió a PR Yacht que el negocio se haría directamente entre NBA y el cliente. A saber, destacó que el señor Obey escribió "*vessel to be sold directly to the purchaser*" y "*[i]f the customer would like to move forward, please have him reach out directly to this email address and I can assist him*". Asimismo, particularizó que el 24 de febrero de 2023, el señor Obey se comunicó directamente con el señor Añazco para discutir el negocio. Por esto, el matrimonio Añazco enfatizó que el señor Obey tenía un intercambio patrimonial entre NBA y PR Yacht para que esta última compañía actuara como su agente de venta del yate en Puerto Rico.

Por último, el matrimonio Añazco manifestó que estaba obligado a dirigir la reclamación contra PR Yacht por no tener contrato alguno con el señor Obey, a pesar de que la controversia obedecía a su conducta de retener el dinero reclamado.

El 15 de marzo de 2023, PR Yacht presentó una *Dúplica a réplica a oposición a moción de desestimación de los terceros demandados.*[15] En esta, reiteró que los apelados admitieron tener el derecho exclusivo de vender embarcaciones Astondoa en Puerto Rico, por lo que ostentaban unos contactos con el foro mucho más que los mínimos requeridos para que el TPI adquiriera jurisdicción sobre sus personas. A su vez, recalcó que la propia Regla 408 de Evidencia, *supra*, R. 408, apoyaba la admisibilidad del *Settlement and Release Agreement* para el exclusivo y limitado propósito de demostrar el interés del señor Obey y NBA en el territorio de Puerto Rico, en término de la exclusividad en mercadear los yates Astondoa. Asimismo, subrayó que el referido documento se presentó para

---

[15] *Íd.*, Anejo 20, págs. 128-158.

refutar la alegación de los apelados de no tener contactos mínimos con el foro.

El 24 de septiembre de 2024, el matrimonio Añazco presentó una *Oposición a solicitud de desglose y otros particulares*.[16] En su virtud, peticionó al TPI que denegara la solicitud el señor Obey y NBA en desglosar la moción que presentaron el 1 de marzo de 2024. Adujo que en la referida moción se expuso que PY Yacht intercambió correos electrónicos con el señor Obey, quien estaba alegadamente consciente de que el yate era para un cliente ubicado en Puerto Rico.

Por otra parte, arguyó que demandaron al matrimonio López-Costas y a PR Yacht para que le devolvieran la suma de $608,420.00. Sin embargo, expuso que el matrimonio López-Costas y a PR Yacht presentaron una *Demanda contra tercero* contra el señor Obey y NBA en reclamación de los $608,420.00 que el señor Añazco contribuyó. Por ello, puntualizó que el remedio solicitado por el matrimonio López-Costas y a PR Yacht en contra de los apelados fue a favor del matrimonio Añazco, quien era el titular del dinero. En tal virtud, sostuvo que en *Guzmán v. Otis Elevator, Inc.*, et al., 135 DPR 296 (1994), el Tribunal Supremo de Puerto Rico estableció que cuando se trae a un tercero demandado para que responda directamente al demandante, surgía una relación adversativa entre dichas partes, por lo que el TPI podía conceder un remedio a su favor en contra de los apelados, sin tener que enmendar las alegaciones para incluirlos como demandados. Ante ello, planteó que tenía un claro interés en la reclamación contra el señor Obey, quien retuvo su dinero.

Sometido el asunto ante su consideración, el 15 de noviembre de 2024, el TPI emitió una *Sentencia parcial*.[17] El Foro Primario declaró Con Lugar la solicitud del señor Obey y NBA de desestimar la *Demanda contra tercero* presentada en su contra por falta de

---

[16] *Íd.*, Anejo 22, págs. 168-173.
[17] *Íd.*, Anejo 24, págs. 180-192. Archivada y notificada el 20 de noviembre de 2024.

jurisdicción sobre sus personas. Esto, al entender que la prueba presentada no fue suficiente para demostrar los contactos mínimos necesarios para adquirir jurisdicción *in personam*. Según el TPI, no se estableció que los apelados realizaron actos o transacciones dentro del foro. Sobre el particular, el Foro *a quo* indicó que resolvió el asunto de contactos mínimos en base a los documentos y las declaraciones presentadas, según disponía el caso *Molina v. Supermercado Amigo, Inc.,* 119 DPR 330 (1987).

El Foro Primario reseñó que durante una vista argumentativa del 20 de septiembre de 2024, declaró Con Lugar en corte abierta la petición de los apelados en eliminar del récord una *Moción sobre otra del tercero demandado y presentando documentos pertinentes* que presentó el matrimonio Añazco al amparo de la Regla 10.5 de Procedimiento Civil, *supra*, R. 10.5. El TPI basó su determinación principalmente en que el matrimonio Añazco estaba al margen de la disputa de la *Demanda contra tercero* y carecía de legitimación activa sobre el asunto. Relató que declaró No Ha Lugar a la reconsideración solicitada por el señor Añazco. Cónsono con lo anterior, declaró No Ha Lugar a la *Oposición a Solicitud de Desglose y Otros Particulares* que el matrimonio Añazco presentó el 24 de septiembre de 2024.

Por otro lado, el TPI determinó que el *Settlement and Release Agreement* no era admisible en evidencia, por lo que no podía ser utilizado en apoyo de las alegaciones de PR Yacht por ser un borrador que versaba sobre un posible acuerdo de transacción. El Foro Primario apuntó que la Regla 408 de Evidencia, *supra*, R. 408, establece que cualquier evidencia sobre conducta o declaraciones efectuadas durante gestiones transaccionales no eran admisibles en evidencia. Sobre lo anterior, consignó que no se podía obviar que las admisiones del señor Obey en el referido documento se dieron en el contexto de gestiones transaccionales que eran inadmisibles en evidencia. El TPI subrayó que el documento no se ofreció para

impugnar a un testigo, sino para probar contactos mínimos del señor Obey. Ante ello, resolvió que el borrador no se podía utilizar para intentar probar que se realizaron actos o se consumó alguna transacción dentro de Puerto Rico. No obstante, expresó que, de considerar el contenido del referido borrador, el mismo demostró que el señor Obey actuó en representación corporativa de NBA, mientras que el señor López Garay fungió como representante de PR Yacht.

Con relación a la alegación de que el señor Obey mercadeaba embarcaciones Astondoa en Puerto Rico por virtud del IMS Yachts como agente de ventas con oficinas en Fajardo, Puerto Rico, el TPI puntualizó que los documentos ofrecidos para apoyar tal alegación no fueron identificados ni autenticados válidamente. A su vez, pronunció que las declaraciones juradas del señor Añazco y del señor López Garay estaban basadas en prueba de referencia inadmisible.

Inconformes con la determinación del TPI, el 20 de diciembre de 2024, los apelantes presentaron este recurso de apelación, en el que esbozaron que el TPI incidió en cometer los siguientes errores:

> **PRIMERO:** ERRÓ EL TRIBUNAL AL EXCLUIR EL "SETTLEMENT AGREEMENT" BAJO LA REGLA 408 DE EVIDENCIA CUANDO EL PROPÓSITO DE SU INTRODUCCIÓN FUE LIMITADO A, INTERLOCUTORIAMENTE, DEMOSTRAR ACTOS AFIRMATIVOS DEL TERCERO DEMANDADO DENTRO DE LA JURISDICCIÓN, CONSTITUTIVOS DE LOS CONTACTOS M[Í]NIMOS REQUERIDOS PARA ASUMIR JURISDICCIÓN *IN PERSONAM*, Y NO PARA PROBAR LA VALIDEZ DE LA RECLAMACIÓN DE PR YACHT.
>
> **SEGUNDO:** ERRÓ EL TRIBUNAL AL NO DETERMINAR QUE EL "SETTLEMENT AGREEMENT" ESTABLECE PRIMA FACIE HECHOS QUE DEMUESTRAN QUE HAY JURISDICCIÓN SOBRE LA PERSONA DEL TERCERO DEMANDADO NO DOMICILIADO.
>
> **TERCERO:** ERRÓ EL TRIBUNAL AL EXCLUIR PRUEBA OFRECIDA POR PR YACHT POR EL FUNDAMENTO DE SER PRUEBA DE REFERENCIA INADMISIBLE CUANDO LAS REGLAS DE EVIDENCIA NO APLICAN A PROCESOS INTERLOCUTORIOS COMO ESTE, A TENOR CON LA REGLA 103 (D) (2) DE LAS REGLAS DE EVIDENCIA DEL 2009.
>
> **CUARTO:** ERRÓ EL TRIBUNAL AL NO DETERMINAR QUE, EN BASE A DICHA PRUEBA ERRÓNEAMENTE [EXCLUÍDA], PR YACHT NO DEMOSTR[Ó] PRIMA FACIE HECHOS QUE DEMUESTRAN QUE HAY JURISDICCIÓN SOBRE LA PERSONA DEL TERCERO DEMANDADO NO DOMICILIADO.

**QUINTO:** ERRÓ EL TRIBUNAL AL EXCLUIR LA PRUEBA SOMETIDA POR AÑAZCO BAJO LA REGLA 10.5 DE PROCEDIMIENTO CIVIL, CUANDO LOS REMEDIOS SOLICITADOS POR EL DEMANDADO Y DEMANDANTE CONTRA TERCERO ERAN EN SU BENEFICIO, A TENOR CON LO RESUELTO POR EL TRIBUNAL SUPREMO EN EL CASO DE GUZMÁN V. OTIS ELEVATOR, INC. ET AL., 135 D.P.R. 296, 302 (1994).

**SEXTO:** ERRÓ EL TRIBUNAL AL NO DETERMINAR QUE LA PRUEBA SOMETIDA POR AÑAZCO DEMOSTRABA QUE LOS TERCEROS DEMANDADOS EN EFECTO SE DISPON[Í]AN A EFECTUAR UN NEGOCIO CON UN RESIDENTE DE PUERTO RICO, Y CON UNA EMBARCACIÓN DESTINADA TAMBI[É]N A PUERTO RICO, POR CUANTO SE TRATABA DE UNA TRANSACCI[Ó]N DENTRO DEL FORO QUE CONSTITUYE CONTACTOS M[Í]NIMOS BAJO EL CASO DE A.H. THOMAS, CO. V. TRIBUNAL SUPERIOR, 98 D.P.R. 883, 890 (1970).

En esencia, los apelantes plantearon que el ofrecimiento del *Settlement and Release Agreement* no contravino la Regla 408 de Evidencia, *supra*, R. 408, ya que se presentó con el propósito de probar hechos que *prima facie* constituyeron contactos mínimos con el foro. Argumentaron que el señor Obey admitió en dicho documento que era el representante exclusivo de venta de Astondoa en Puerto Rico y su intención de proteger el territorio de la incursión de cualquier persona que quisiera vender dicho yates. De acuerdo con los apelantes, dichas afirmaciones del señor Obey eran indicativas de que quería beneficiarse de las leyes de Puerto Rico, específicamente de la *Ley de contratos de distribución de Puerto Rico*, *supra*. Al mismo tiempo, apuntaron que, en vista de que el señor Obey retuvo la suma de $608,420.00 como parte de un negocio realizado en Puerto Rico, no existía controversia en que el dinero provino del señor Añazco, quien nunca se trasladó al estado de Florida. Así las cosas, alegaron que el elemento de justicia sustancial descrito en el caso *A.H. Thomas Co. v. Tribunal Superior*, 98 DPR 883 (1970), hacía que la balanza se inclinara a favor de asumir la jurisdicción sobre una persona que perseguía ventas exclusivas de lujosas embarcaciones en Puerto Rico.

Los apelantes adujeron que la Regla 408 de Evidencia, *supra*, R. 408, prohibía presentar las ofertas de acuerdos transaccionales

como evidencia únicamente para probar la validez o la falta de validez de una reclamación. Por ello, señalaron que el Tribunal Supremo determinó en *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009), que no toda oferta de transacción es inadmisible, siempre que no se utiliza para demostrar la validez de una reclamación. Asimismo, destacaron que la Regla 107 de Evidencia, *supra*, R. 107 permitía presentar evidencia para fines limitados.

Por otro lado, los apelantes indicaron que el TPI erró al excluir las declaraciones juradas del señor Añazco y de PR Yacht ante el fundamento de que eran prueba de referencia inadmisible. En tal sentido, señalaron que toda la prueba que el Foro Primario consideró constituyó prueba de referencia, ya que no se escucharon a los testigos, ni se les brindó oportunidad de contrainterrogar al señor Obey. Asimismo, detallaron que, a tenor con la Regla 103 (D)(2) de Evidencia, *supra*, R. 103 (D)(2), los preceptos de evidencia no vincularon al TPI en los procesos interlocutorios.

Con relación a lo anterior, los apelantes sostuvieron que la Regla 12.1 de Procedimiento Civil, *supra*, R.12.1 permitía incluir la *Demanda contra tercero*, ya que el señor Obey tenía en su poder el dinero objeto de la *Demanda original*. De esta manera, especificaron que el TPI podía exigir al señor Obey su devolución al señor Añazco.

Por su parte, el 17 de enero de 2025, el señor Obey y NBA presentaron su alegato en torno al recurso de apelación. En este, arguyeron que los apelantes citaron erróneamente al Tribunal Supremo en *Carpets & Rugs v. Tropical Reps.*, *supra*, ya que dicho caso era distinguible del que nos concierne por tratarse sobre un documento de seguros que no se formalizó como parte de un proceso de negociación conducente a un acuerdo de transacción. Por el contrario, alegaron que el *Settlement and Release Agreement* era un borrador que se creó dentro una negociación para evitar un pleito. Al respecto, adujeron PR Yacht utilizó dicho documento para probar que

se realizaron actos o se consumió una transacción dentro de foro, por lo que era inadmisible. También, los apelados manifestaron que el *Settlement and Release Agreement* demostró que tanto el señor López Garay como el señor Obey actuaron en sus capacidades representativas de PR Yacht y NBA, respectivamente, por lo que no se podía responsabilizar al señor Obey en su capacidad personal.

A su vez, aseveraron que el hecho de que en el *Settlement and Release Agreement* se propuso que PR Yacht se abstuviera de mercadear los yates Astondoa en Puerto Rico no significó que existían contactos mínimos con el foro ni la intención del señor Obey en beneficiarse de la *Ley de contratos de distribución de Puerto Rico, supra*. Cónsono con lo anterior, los apelados precisaron que el hecho de que NBA fuese distribuidor de los yates Astondoa en Puerto Rico no significó que se querían aprovechar de los beneficios de la aludida ley ni que la misma aplicaba al contrato con PR Yacht. Esto, al aducir que la relación distribuidor-principal era entre NBA y Astilleros Astondoa, con quien no tenían un pleito.

Por otro lado, esbozaron que los apelantes erraron al alegar que las Reglas de Evidencia, *supra*, no eran vinculantes en los procesos interlocutorios, ya que dicho precepto aplicaba solamente a los casos penales e interdictos. En consonancia con lo anterior, indicaron que los apelantes no controvirtieron las declaraciones juradas de los apelados con prueba admisible.

Además, expresaron que el TPI no incidió al excluir la prueba sometida por los apelantes al tratarse de prueba de referencia, especulaciones y alegaciones conclusorias sin apoyo en la prueba. Con relación a la alegación del señor Añazco de que no existía razón alguna para suponer que lo manifestado por los oficiales de Astondoa no pudiera ser confirmado por ellos de haber sido citados a declarar, los apelados esgrimieron que era prueba clara de que PR Yacht no

presentó prueba competente para confirmar las alegaciones del señor Añazco y refutar las declaraciones juradas de NBA y el señor Obey.

En lo atinente a la *Moción sobre otra del tercero demandado y presentando documentos pertinentes* eliminada del récord, los apelados arguyeron que el Foro Primario tenía plena discreción para manejar los casos y su sala. Subrayaron que tras PR Yacht presentar su oposición a la solicitud de desestimación de los apelados, el TPI dio el asunto por sometido. A su vez, señalaron que el TPI reconsideró su determinación y el 5 de febrero de 2024, emitió una *Orden* en la que le otorgó a los apelados el término de veinte (20) días para presentar una réplica y PR Yacht para presentar una dúplica. Indicaron que el 26 de febrero de 2024, sometieron la réplica que el TPI les autorizó presentar. No obstante, apuntaron que el 1 de marzo de 2024, el matrimonio Añazco presentó una oposición a la réplica, a destiempo y sin obtener la autorización del Foro Primario. Así las cosas, reseñaron que el 20 de septiembre de 2024, solicitaron la eliminación de dicha oposición en el récord, acción que el Foro *a quo* declaró Con Lugar. Expusieron que el matrimonio Añazco solicitó reconsideración, la cual declaró Sin Lugar. Más aún, relataron que el matrimonio Añazco presentó un escrito que, esencialmente, era una moción de reconsideración adicional que el TPI declaró Sin Lugar.

Los apelados arguyeron que resultaba irrelevante e inconsecuente el hecho de que el yate estuviese destinado para el señor Añazco en Puerto Rico y que el señor Obey y PR Yacht tuviesen conocimiento de ello, ya que el negocio era exclusivamente entre PR Yacht y NBA. De esta forma, adujeron que, a pesar de que el negocio entre los apelantes se efectuó en Puerto Rico, el acuerdo entre PR Yacht y NBA se realizó en el estado de Florida.

Por último, los apelados alegaron que el caso *Guzmán v. Otis Elevator, Inc.*, *supra*, se distinguía de este caso, en vista de que PR Yacht no trajo al señor Obey y a NBA para que respondieran

directamente al matrimonio Añazco. A tenor con lo anterior, plantearon que no se creó una relación adversativa entre el matrimonio Añazco y los apelados.

En atención a los errores señalados por los apelantes, procedemos a exponer la normativa jurídica aplicable a este recurso.

**II.**

**A. Jurisdicción sobre la persona**

Es norma reiterada que los tribunales deben ser celosos guardianes del ejercicio de su jurisdicción, razón por la que deben poseer tanto jurisdicción sobre la materia como sobre las personas de los litigantes. *Shuler v. Shuler*, 157 DPR 707, 718 (2002). La jurisdicción sobre la persona es el poder que ostenta un tribunal para sujetar a una parte a su decisión y declarar sus respectivos derechos y obligaciones. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 701 (2012). Como regla general, en nuestro ordenamiento jurídico opera el principio de territorialidad, en el que se dispone que los tribunales solamente pueden ejercer jurisdicción sobre las personas que residen dentro del territorio. *Shuler v. Shuler, supra*; *Riego Zúñiga v. Anónima Lacsa*, 139 DPR 509, 515 (1995). Sin embargo, esta regla tiene como excepción que los tribunales estatales pueden ejercer jurisdicción sobre la persona de un demandado no domiciliado, la cual está ausente de sus límites territoriales. *Shuler v. Shuler, supra*, págs. 718-719; *Riego Zúñiga v. Anónima Lacsa, supra*.

Los tribunales de Puerto Rico tienen jurisdicción sobre un no domiciliado cuando existe una sumisión expresa o tácita de su parte; mantiene su domicilio en la Isla aun cuando esté ausente o tiene contactos mínimos. *Shuler v. Shuler, supra*, págs. 719-720; *Riego Zúñiga v. Anónima Lacsa, supra.* Es decir, "[l]a relación entre el demandado y el foro debe ser de tal naturaleza que sea razonable requerirle a éste que comparezca y se defienda de la acción particular

incoada en dicho foro". *Peguero v. Hernández Pellot,* 139 DPR 487, 498-499 (1995).

En lo que nos respecta, para que el tribunal pueda ejercer jurisdicción sobre la persona de un demandado no residente ni domiciliado, es esencial que haya tenido contactos mínimos con el foro y que la causa de acción surja de tales contactos. *Shuler v. Shuler, supra,* pág. 720. Adicionalmente, se requiere que el contacto del demandado con la jurisdicción resulte de un acto afirmativo de su parte mediante el cual deliberadamente se aproveche de las ventajas del foro. *Íd.,* pág. 720; *A.H. Thomas, Co. v. Tribunal Superior, supra,* pág. 889. Esto incluye cuando el demandado utiliza a una tercera persona para realizar acciones dentro del foro que le son beneficiosas. *Ind. Siderúrgica v. Thyssen Steel Caribbean,* 114 DPR 548, 557-558 (1983). Importante es que "[e]l Estado del foro no excede sus poderes a tenor con la cláusula del debido procedimiento si ejerce jurisdicción personal sobre una corporación que deja ir sus productos por la corriente de comercio con la expectativa de que los mismos serán adquiridos por los consumidores de dicho Estado". *Íd.,* pág. 565 *citando a World-Wide Volkswagen Corp. v. Woodson,* 444 US 286 (1979). Pues, el debido proceso de ley no se puede invocar como escudo territorial para evitar obligaciones que el demandado asumió voluntariamente mediante actividades interestatales. *Burger King Corp. v. Rudzewicz,* 471 US 462, 474 (1985). Pues, los medios de comunicación y transportación modernos no hacen injusto someter a un demandado a litigar en otro foro por disputas relacionadas con las antes mencionadas actividades interestatales. *Íd.*

De esta forma, existen transacciones comerciales que se realizan en dos (2) Estados o más que hacen innecesario enfatizar el análisis de los contactos mínimos meramente en la presencia física, el consentimiento para ser demandado o en la tenencia de bienes en el foro que se insta la acción. *Ind. Siderúrgica v. Thyssen Steel*

*Caribbean, supra*, págs. 561-562. Sin embargo, esto no significa que se abolieron las restricciones estatales en torno a la jurisdicción sobre la persona. *Íd.*, pág. 562.

Por virtud de la interpretación jurisprudencial, se elaboraron tres (3) criterios para determinar la jurisdicción sobre la persona de un no residente. Estos son:

> (1) El demandado no residente debe realizar algún acto o consumar alguna transacción dentro del foro. No es necesario que la actividad se efectúe físicamente dentro del foro; el acto o transacción puede realizarse por correo. Un solo acto o transacción basta si sus efectos en el foro son suficientemente sustanciales para cualificar bajo la regla tercera.
>
> (2) La causa de acción debe surgir o resultar de las actividades del demandado dentro del foro. Es concebible que la causa de acción precisa se plasme fuera del foro, pero debido a las actividades del demandado en el foro aun exista el 'contacto mínimo sustancial' que es necesario.
>
> (3) Habiéndose establecido bajo las reglas precedentes un contacto mínimo entre el demandado y el foro, la asunción de jurisdicción fundada en ese contacto debe ser compatible con los principios de 'trato imparcial' y 'justicia sustancial' del debido procedimiento de ley. Si se satisface esta norma, existe un 'contacto mínimo sustancial' entre el foro y el demandado. La razonabilidad de someter al demandado a la jurisdicción se determina frecuentemente por las normas análogas a las de *forum non conveniens. A.H. Thomas, Co. v. Tribunal Superior, supra*, pág. 890.

Una vez se decide que el demandado tenía contactos mínimos con el foro, estos contactos se pueden considerar a la luz de otros factores para determinar si la afirmación de jurisdicción sobre la persona se alinea con el criterio de juego limpio y justicia sustancial. *Burger King Corp. v. Rudzewicz, supra*, pág. 476. A saber, se considera el interés del foro en resolver la disputa; el interés del demandante en obtener un remedio conveniente y efectivo; el interés del sistema judicial interestatal en lograr la más eficiente resolución de las controversias, y el interés de los distintos Estados en promover políticas sociales fundamentales. *Íd.*; *World-Wide Volkswagen Corp. v. Woodson, supra.*

### B. Desestimación

La Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, enumera los fundamentos por los que se permite la desestimación de una

demanda como, entre otros, falta de jurisdicción sobre la persona. Cuando se intenta traer a un no domiciliado ni residente en Puerto Rico, la parte promovente debe alegar hechos suficientes de los cuales se pueda inferir razonablemente que existe jurisdicción sobre la persona de la parte promovida. *Molina Avilés v. Supermercado Amigo, Inc., supra,* págs. 336-337. Pues, la parte promovente de la jurisdicción debe demostrarla. *Íd.*, pág. 337.

En tal caso, el tribunal tiene gran discreción en torno al método de evaluación de la jurisdicción sobre la persona de un demandado o tercera demandado. *Íd.* A saber:

> [S]i el demandado decide impugnar la jurisdicción sobre su persona mediante la presentación de una moción para desestimar al amparo de la Regla 10.2 de Procedimiento Civil, *supra*, el tribunal puede: (1) simplemente evaluarla tomando en consideración sólo las alegaciones de la demanda, o (2) si se acompañan documentos y declaraciones juradas, analizar éstos conjuntamente con las alegaciones y los documentos y contradeclaraciones juradas que presente el demandante en su oposición, o (3) señalar para vista preliminar evidenciaria o (4) posponer la cuestión para decidirla después de la vista en su fondo al resolver el caso. *Íd.*, págs. 337-338.

En la primera alternativa, si el juzgador opta por evaluar la jurisdicción sobre la persona en base a las alegaciones de la demanda, demanda contra tercero, demanda contra coparte o reconvención, deberá dar como ciertos los hechos bien alegados. *Íd.,* pág. 338. En tales circunstancias, el demandante derrota la solicitud de desestimación si demuestra que alegó hechos suficientes que, *prima facie,* de probarse, confieren jurisdicción *in personam* sobre el no domiciliado a tenor con los requisitos mínimos de su debido proceso de ley. *Íd.*

Ahora bien, en la segunda alternativa, el demandante deberá presentar documentos y contradeclaraciones juradas que acrediten, *prima facie,* hechos que demuestren que existe jurisdicción sobre la persona de un no domiciliado. *Íd.*, pág. 339.

En tal evaluación, la moción de desestimación se derrota del tribunal determinar que, prima facie, se estableció el requisito de

jurisdicción sobre la persona del demandado. *Íd.*, pág. 340. "Esto, sin embargo, no releva al promovente de la acción de demostrar, mediante la preponderancia de la prueba, en el juicio en su fondo, que dicha jurisdicción existe". *Íd.*

Para dilucidar la controversia en torno a la jurisdicción sobre la persona, las partes pueden solicitar descubrimiento de prueba limitado a esta cuestión. *Íd.*, pág. 341. Además, si la determinación jurisdiccional puede disponer de todo o parte del caso, se aconseja celebrar una vista evidenciaria, de acuerdo con las Reglas 10.4, 38.2 y 43.5 de Procedimiento Civil, *supra*. Si luego de celebrar la vista evidenciaria, el tribunal determina que existe jurisdicción sobre la persona del demandado, el demandante queda relevado de probar tal hecho en el juicio en su fondo. *Íd.* Por el contrario, si el tribunal determina que no existe jurisdicción sobre la persona, debe desestimar la acción. *Íd.*, págs. 341-342.

### C. Aplicabilidad de las Reglas de Evidencia

La Regla 103 de Evidencia, *supra*, R. 103, establece que este cuerpo legal no obliga en:

> (1) las determinaciones preliminares a la admisibilidad de prueba, de conformidad con la Regla 109(A);
> (2) los procedimientos interlocutorios o post sentencia, entre otros:
>> (a) procedimientos relacionados con la determinación de causa probable para arrestar o expedir orden de registro y allanamiento;
>> (b) fase de la sentencia en el procedimiento penal;
>> (c) procedimientos relacionados con la imposición de fianza o condiciones en los procedimientos penales;
>> (d) vistas de revocación de libertad a prueba o condicionada;
>> (e) procedimientos relacionados con entredichos provisionales e interdictos preliminares, y
> (3) los procedimientos *ex parte*

El profesor Chiesa Aponte sostiene que, a diferencia del lenguaje "no aplican", la utilización del término "no obligan" en distintos etapas procesales, como en los procedimientos interlocutorios, le brinda discrecionalidad al tribunal para aplicar las Reglas de Evidencia, *supra*. E. L. Chiesa Aponte, *Reglas de Evidencia*

*Comentadas*, 1ra. ed., Puerto Rico, Ed. Ediciones SITUM, 2016, pág. 748. En tal virtud, el Comité Asesor Permanente de Reglas de Evidencia recomendó "que la norma generar de aplicar las Reglas de Derecho Probatorio en toda acción civil o penal en las Salas del Tribunal de Primera Instancia debe ser motivo de excepción solamente en circunstancias extraordinarias". R. Emmanuelli Jiménez, *Prontuario de derecho probatorio puertorriqueño*, Puerto Rico, Ed. Ediciones SITUM, 2015, pág. 60 *citando al Comité Asesor Permanente de Reglas de Evidencia.*

**D. Evidencia sobre transacciones y ofertas para transigir**

La Regla 408 de Evidencia, *supra*, R. 408, rige lo concerniente a la presentación de evidencia de transacciones y ofertas para transigir. A saber:

> (A) No es admisible para probar la validez o falta de validez de una reclamación, la cuantía reclamada o para impugnar a base de una declaración anterior inconsistente o por contradicción:
> > (1) Evidencia de que una persona (a) ha provisto, ofrecido o prometido proveer o (b) ha aceptado, ofrecido o prometido aceptar algo de valor, con el propósito de intentar o lograr transigir una reclamación cuando estaba en controversia su validez o la cuantía reclamada, o
> > (2) Evidencia sobre conducta o declaraciones efectuadas durante gestiones dirigidas a transigir.
> (B) Esta Regla no requiere la exclusión de evidencia que se ofrece para otros propósitos tales como impugnar por parcialidad o prejuicio a una persona testigo, refutar una alegación de demora indebida o probar un intento de obstruir una investigación o procedimiento criminal. Para fines de esta Regla, no se considerará como intento de obstruir una investigación o procedimiento criminal, la conducta dirigida a transigir un delito cuya transacción está autorizada por las Reglas de Procedimiento Criminal, el Código Penal o legislación especial.
> (C) Esta Regla aplica en casos civiles y criminales.

Esta regla de exclusión busca promover que las partes puedan transigir sus reclamaciones civiles sin el temor de que la oferta o las conversaciones habidas en el curso de las negociaciones se utilicen en evidencia de no haberse perfeccionado el acuerdo. E. L. Chiesa Aponte, *op. cit.*, pág. 108. Igualmente, esta regla de exclusión reconoce que, normalmente, las transacciones de reclamaciones no representan una aceptación de responsabilidad, sino que reconocen

que un pleito provoca inconvenientes y costos que son preferible evitar. R. Emmanuelli Jiménez, *op. cit.*, pág. 227.

La Regla 408 de Evidencia, *supra*, R. 408, enumera una serie de excepciones, como que la evidencia se utilice para impugnar a un testigo por parcialidad o prejuicio. Las declaraciones hechos durante los intentos para transigir una reclamación no se pueden utilizar para impugnar un testimonio por ser incompatibles ni para establecer la falsedad de las declaraciones. E. L. Chiesa Aponte, *op. cit.*, pág. 110. Es decir, "[l]a Regla expone su exclusión a casos de impugnación de credibilidad por contradicción o incongruencia". R. Emmanuelli Jiménez, *op. cit.* Asimismo, las transacciones u ofertas de transacciones se pueden utilizar para refutar una alegación de demora indebida o demostrar un intento de obstruir una investigación o proceso criminal. E. L. Chiesa Aponte, *op. cit.*, págs. 110-111. Sin embargo, esto no representa una lista taxativa de excepciones. E.L. Chiesa Aponte, *Compendio de evidencia (en el sistema adversarial)*, 1ra. ed., México, Ed. Tirant Lo Blanch, 2021, pág. 618.

El Tribunal Supremo resolvió en *Carpets & Rugs v. Tropical Reps., supra,* que esta regla de exclusión no era aplicable en el contexto de las comunicaciones de una aseguradora para resolver una reclamación, ya que no constituye una oferta de transacción.

### E. Moción eliminatoria

La Regla 10.5 de Procedimiento Civil, *supra*, R. 10.5 dispone lo siguiente:

> El tribunal podrá ordenar que se elimine de una alegación cualquier defensa insuficiente o cualquier materia redundante, inmaterial, impertinente o difamatoria, y cualesquiera documentos en apoyo de las mismas, por iniciativa propia en cualquier momento, o a moción de una parte, presentada antes de contestar una alegación o dentro de los diez (10) días de habérsele notificado dicha alegación, si no se permite una alegación responsiva.

Mediante esta moción, se puede solicitar al tribunal eliminar una alegación o una moción en su totalidad. R. Hernández

Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Lexis Nexis, 2017, pág. 312. El criterio que el foro primario debe utilizar para eliminar las alegaciones consiste en determinar si la materia sería admisible como prueba en el juicio, en base a las Reglas de Evidencia, *supra. Íd.* Importante es que las mociones eliminatorias no son favorecidas, ya que solamente debe ordenarse una eliminación si la alegación carece de relación alguna con la cuestión en controversia o es claramente redundante, inmaterial, impertinente o escandalosa. *Rossy v. Tribunal Superior*, 80 DPR 729 (1958).

En tal virtud, el estándar para adjudicar una moción al amparo de la Regla 10.5 de Procedimiento Civil, *supra*, R. 10.5 es el mismo que se utiliza al resolver una moción de desestimar por la demanda no aducir hechos constitutivos de una causa de acción. *Íd.*

Es decir, el tribunal debe determinar si, en base a los hechos bien alegados en la demanda, existe una reclamación plausible que justifique que el demandante tiene derecho a un remedio, a la luz de la experiencia y el sentido común. *Blassino Alvarado y otro v. Reyes Blassino y otros*, 2024 TSPR 93; *Costas Elena y otros v. Magic Sport y otros*, 213 DPR 523 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384 (2022); *Casillas Carrasquillo v. ELA*, 209 DPR 240, 247 (2022); *Colón Gorbea v. Sánchez Hernández et al.*, 202 DPR 760, 765 (2019); *López García v. López García*, 200 DPR 50, 69 (2018); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994). De no cumplir con el estándar de plausibilidad, "el tribunal debe desestimar la demanda y no permitir que una demanda insuficiente proceda bajo el pretexto de que con el descubrimiento de prueba puedan probarse las alegaciones conclusorias". *Costas Elena y otros v. Magic Sport y otros, supra.* Por ello, la demanda no debe desestimarse, excepto que se demuestre que el demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar en apoyo a su

reclamación. *Íd.* Igualmente, la demanda no debe ser desestimada si es susceptible de ser enmendada. *Íd.*

En torno a los terceros demandados, no es necesario enmendar formalmente una demanda para recobrar directamente de un tercero traído al pleito por el demandado. Esto, ya que el demandante puede recobrar si, en algún momento, la controversia estuvo trabada entre su persona y el tercero demandado, quien tuvo oportunidad de defenderse. *Guzmán v. Otis Elevator, Inc.*, et al., *supra*, pág. 302.

Esbozada la normativa jurídica, procedemos a aplicarla a los hechos que nos conciernen.

**III.**

En esencia, los apelantes plantearon en sus seis (6) señalamientos de error que el Foro Primario incidió al no determinar que se demostró *prima facie* que ostentaba jurisdicción sobre las personas de los terceros demandados, el señor Obey y NBA, por tener contactos mínimos con el foro. Les asiste la razón a los apelantes.

Como bien se reseñó anteriormente, para que un tribunal pueda sujetar a un litigante a su determinación, debe poseer jurisdicción sobre su persona. Una de las formas en que los tribunales pueden adquirir jurisdicción sobre las personas no domiciliadas es mediante los contactos mínimos con el foro. Para ello, la causa de acción debe surgir de los referidos contactos mínimos que, fundamentalmente, son los actos afirmativos de la parte para deliberadamente aprovecharse sobre las ventajas del foro.

En el presente caso, los apelantes demostraron de manera *prima facie* que los apelados, el señor Obey y NBA, mantuvieron contactos mínimos con el foro en relación con una transacción comercial que eventualmente cancelaron y tuvo como desenlace la controversia que aquí nos concierne. A saber, de los hechos bien alegados en la *Demanda* original y en la *Demanda contra tercero*, así como de los hechos alegados por los apelados en su solicitud de

desestimación, surgió que el señor Añazco suscribió un contrato con PR Yacht para la compra de un yate Astondoa 677 2024 de la compañía española Astilleros Astondoa. Dicha embarcación solamente podía ser distribuida en Puerto Rico por NBA, una corporación creada bajo las leyes del estado de Delaware, con oficinas principales en Florida. De las propias alegaciones de los apelados, surgió que eran los representantes de la venta de las embarcaciones Astondea en Puerto Rico. *Véase la Comparecencia especial solicitando desestimación bajo la Regla 10.2 y otros extremos presentada el 9 de noviembre de 2023 por el señor Obey y NBA*. Es decir, si el residente de este foro deseaba adquirir una embarcación Astondoa, dicha transacción comercial se tenía que efectuar solamente mediante la distribución de NBA. En virtud de lo anterior, PR Yacht y NBA suscribieron un contrato de compraventa del yate un yate Astondoa 677 por la suma de $3,050,000.00, pagadero de la siguiente forma: $2,200,000.00 para el 21 de octubre de 2022 y $850,000.00 al entregar el yate en España. Ante la presunta falta de pago, NBA canceló el contrato habido con PR Yacht y retuvo del depósito de $608,420.00 que el señor Añazco le transfirió a PR Yacht para que, sucesivamente, lo transfiriera a NBA como parte de la transacción. Según se alega, dicha suma de $608,420.00 está en posesión de los terceros demandados. Además, es objeto de la reclamación de cobro de dinero que el matrimonio Añazco interpuso contra PR Yacht y que, consecuentemente, dicha compañía reclamó contra el señor Obey y NBA. Estos hechos debidamente fundamentados, sin más, eran suficientes para demostrar, en primer lugar, que existía un entronque común entre la *Demanda* original entre los apelantes y la *Demanda contra tercero* incoada por el matrimonio López-Costas y NBA en contra de los apelados.

En segundo lugar, los hechos antes relatados demostraron, prima facie, que los apelados mantuvieron contactos mínimos con el

foro y que la causa de acción tanto de la *Demanda* original entre los apelantes como de la *Demanda contra tercero* surgía de dichos contactos mínimos.

No nos persuaden las alegaciones de los apelados de que este foro carece de jurisdicción sobre sus personas meramente por razones del principio de territorialidad, que expresamente la jurisprudencia federal y de Puerto Rico han ampliado, para evitar los litigios relacionados con actividades interestatales llevadas a cabo en Puerto Rico. Contrario a los argumentos presentados por el señor Obey y NBA, el hecho de ser los representantes de las embarcaciones Astondoa en el territorio de Puerto Rico y que por tal virtud alcanzaron la transacción comercial con PR Yacht significa claramente que realizaron actos afirmativos dentro del foro para vender el yate y llevar a cabo sus negocios, aun cuando no estaban físicamente en la Isla. Como se apuntara previamente, desde el siglo pasado el Tribunal Supremo de Estados Unidos ha expresado que los medios de comunicación y transporte modernos no hacen injusto someter a un demandado a litigar en otro foro por disputas relacionadas con las actividades interestatales que voluntaria y deliberadamente asumió. Véase *Burger King Corp. v. Rudzewicz, supra.*

Así las cosas, entendemos que se configuraron los tres (3) criterios para determinar la jurisdicción sobre la persona del señor Obey y NBA, quienes son no domiciliados, según expuestos en el caso *A.H. Thomas, Co. v. Tribunal Superior, supra.* En primer lugar, los apelados consumaron una transacción de compraventa del yate Astondoa 677 dentro del foro, sin que fuese necesario efectuarla dentro del territorio. En segundo lugar, tanto la *Demanda original* como la *Demanda contra tercero* surgieron como parte de las actividades de los apelados dentro del foro, ya que se alegó que el señor Obey por virtud de NBA está reteniendo la suma de

$608,420.00 que presuntamente le corresponde al matrimonio Añazco. En tercer lugar, tras haber establecido en contacto mínimo entre los apelados con el foro, determinamos que no se quebrantaron los principios de trato imparcial y justicia sustancial de su debido proceso de ley. Pues, el foro tiene un interés en resolver la disputa habida entre los apelantes y entre PR Yacht y los apelados en un mismo pleito; el matrimonio Añazco demostró su interés como demandante en obtener un remedio conveniente y efectivo; nuestro sistema judicial interestatal tiene el interés de lograr la más eficiente resolución de las controversias, y entre los Estados existe un interés en promover políticas sociales fundamentales. Véase *Burger King Corp. v. Rudzewicz, supra*; *World-Wide Volkswagen Corp. v. Woodson, supra.*

Por tal motivo, en torno al cuarto y sexto señalamiento de error, concluimos que erró el TPI al no determinar que se presentó prueba suficiente para demostrar, *prima facie*, que los apelados realizaron una transacción dentro del territorio de Puerto Rico, por lo que poseía jurisdicción sobre sus personas, a tenor con la normativa jurídica vigente.

La anterior determinación se pudo alcanzar sin la necesidad de evaluar el *Settlement and Release Agreement* que los apelantes alegaron que el señor Obey entregó. Sobre el particular, en su primer y segundo señalamiento de error, los apelantes plantearon que el ofrecimiento del *Settlement and Release Agreement* tenía propósito de probar hechos que *prima facie* constituyeron contactos mínimos con el foro por el señor Obey admitir que era el representante exclusivo de venta de Astondoa en Puerto Rico y su intención de proteger el territorio de la incursión de cualquier persona que quisiera vender dicho yates. Por su parte, los apelados arguyeron que dicho documento era inadmisible en evidencia a tenor con la Regla 408 de

Evidencia, *supra*, R. 408, por ser un borrador que versaba sobre un posible acuerdo de transacción.

En tal caso, los apelantes plantearon que el *Settlement and Release Agreement* se debía admitir en evidencia para, principalmente, demostrar la verdad del contenido de dicho acuerdo de transacción que las partes no lograron suscribir, lo cual es incompatible con Regla 408 de Evidencia, *supra*, R. 408. Sobre el particular, los apelantes no nos demostraron que el documento se iba a utilizar para impugnar a los apelados por parcialidad o perjuicio, refutar una alegación de demora indebida, o demostrar un intento de obstruir una investigación o proceso criminal. Por cuanto, no incidió el TPI al no admitir en evidencia el *Settlement and Release Agreement* para el propósito planteado por los apelantes de demostrar la jurisdicción *in personam* de los apelados. No obstante, reiteramos que dicho documento no incide en la determinación de que ciertamente el TPI tiene jurisdicción sobre las personas de los terceros demandados, el señor Obey y NBA.

Con respecto al tercer señalamiento de error, es preciso destacar que, de acuerdo con la Regla 103 de Evidencia, *supra*, dichas reglas no son obligatorias en ciertas etapas, como en los procedimientos interlocutorios. Sin embargo, dicho precepto legal no prohíbe que el Foro Primario aplique las Reglas de Evidencia, *supra*, en tales procedimientos interlocutorios. En otras palabras, el lenguaje le otorga discrecionalidad al TPI para aplicar las reglas de derecho probatorio. En ausencia de demostración de abuso de discreción, el TPI no cometió un error al aplicar discrecionalmente las Reglas de Evidencia, *supra*, en la evaluación de la admisibilidad de la evidencia excluida.

Por último, en el quinto señalamiento de error, los apelantes alegaron que el TPI erró al eliminar del récord una *Moción sobre otra del tercero demandado y presentando documentos pertinentes* que

presentó el matrimonio Añazco, al amparo de la Regla 10.5 de Procedimiento Civil, *supra*, R. 10.5, por ser contraria a la normativa jurídica expuesta en *Guzmán v. Otis Elevator, Inc.*, et al., *supra*. Por los fundamentos antes expuestos en torno a que existe un entronque común entre la *Demanda* original entre los apelantes y la *Demanda contra tercero* incoada por el matrimonio López-Costas y NBA en contra de los apelados, resolvemos que los apelantes tienen la razón.

Es norma reiterada que una moción eliminatoria al amparo de la Regla 10.5 de Procedimiento Civil, *supra*, R. 10.5, debe evaluarse en base a si los hechos bien alegados en la moción que se pretendió eliminar, existía una reclamación plausible que justificara que el matrimonio Añazco tenía derecho a un remedio, a la luz de la experiencia y el sentido común. Al realizar tal ejercicio, inequívocamente resulta que, contrario a lo concebido por el TPI, el matrimonio Añazco no estaba al margen de la disputa de la *Demanda contra tercero* porque la misma versa sobre la suma de dinero objeto de su reclamación en cobro de dinero. Esto, sin tener la necesidad de enmendar formalmente la *Demanda* original para recobrar la suma alegada directamente de los apelados. A raíz de lo anterior, se equivocó el Foro Primario al eliminar las alegaciones del matrimonio Añazco.

## IV.

Por las razones que anteceden, se revoca la determinación recurrida en cuanto a que foro carecía de jurisdicción sobre la persona del señor Obey y NBA por falta de contactos mínimos con el foro, la desestimación de la *Demanda contra tercero* en contra los apelados y a la eliminación de la *Moción sobre otra del tercero demandado y presentando documentos pertinentes* que presentó el matrimonio Añazco.

Se devuelve el caso al TPI para que continúe con los procedimientos de conformidad con lo aquí dispuesto.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones