Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| BABILONIA INDUSTRIAL WELDING, LLC<br><br>Parte Recurrida<br><br>v.<br><br>R-G ENGINEERING, INC. Y OTROS<br><br>Parte Peticionaria | TA2025CE00541 consolidado con TA2025CE00547 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm. SJ2025CV00828<br><br>Sobre: Cobro de Dinero e Incumplimiento Contractual |

Panel integrado por su presidenta la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Rodríguez Flores, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de octubre de 2025.

El 15 de agosto de 2025, el Tribunal de Primera Instancia (TPI), Sala de San Juan dictó *Resolución y Orden* mediante la cual denegó la *Moción de Desestimación* al amparo de la Regla 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 (5), presentada por RG Engineering, Inc. Así también, el foro primario declaró *no ha lugar* a la *Moción solicitando paralización de procedimientos y posterior desestimación conforme la doctrina de forum non conveniens*, presentada por RGE Dominicana, SLR, RNC. A la luz de lo resuelto, el TPI ordenó la continuación de los procedimientos y concedió término a ambos codemandados para contestar la demanda.

Mediante el recurso de *certiorari* TA2025CE000541, comparece RG Engineering, Inc. (RG Engineering) y solicita que revoquemos la denegatoria de su *Moción de Desestimación.*

Por su parte, en el recurso de *certiorari,* TA2025CE000547, comparece RGE Dominicana, SLR, RNC (RGE Dominicana) cuestionando el rechazo de su *Moción solicitando paralización de*

*procedimientos y posterior desestimación conforme la doctrina de forum non conveniens.*

Dado que los recursos plantean errores en la misma *Resolución y Orden*, ordenamos su consolidación conforme a la Regla 80.1 del Reglamento de este Tribunal de Apelaciones[1], y disponemos.

## I.

El 30 de enero de 2025, Babilonia Industrial Welding, LLC (Babilonia) presentó una *Demanda* sobre cobro de dinero e incumplimiento de contrato contra RG Engineering, RGE Dominicana y otros codemandados.[2] Según las alegaciones, representantes de RG Engineering y RGE Dominicana estuvieron en contacto con Babilonia para la contratación de unos servicios de reparación en unas unidades de transmisión o eléctricas ubicadas en Punta Catalina, República Dominicana. La parte demandante indicó que el requerimiento de los servicios, el proceso de aprobación de estimado y la contratación tuvo lugar en Puerto Rico. Explicó que, una vez aprobados los acuerdos, incluida la facturación, Babilonia movilizó sus operaciones a Punta Catalina y finalizó todos los servicios para los que fue contratada.

Babilonia adujo que, según lo acordado, RG Engineering y RGE Dominicana tenían hasta el 23 de agosto de 2024 para el saldo total de la deuda, y que, a la fecha de la presentación de la demanda, no habían remitido pago alguno. Tampoco pagaron un trabajo posterior de reparación de emergencia en la unidad 2 de Punta Catalina, facturado el 11 de septiembre de 2024.

Babilonia manifestó que la suma total de $742,223.91 estaba vencida, y era líquida y exigible. En consecuencia, solicitó que se

---

[1] Regla 80.1 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, a las págs. 106-107, 215 DPR __ (2025).
[2] Véase, *Demanda,* SUMAC-TA2025CE00541, apéndice 1.

condenara a las codemandadas al pago solidario de la cantidad adeudada, más costas, gastos y honorarios de abogado.

El 9 de abril de 2025, RG Engineering presentó una *Moción de desestimación* al amparo de la Regla 10.2 (5) de Procedimiento Civil, *supra*.[3] Planteó que procedía que se desestimara la causa de acción en su contra porque quien contrató y recibió los servicios en Punta Catalina fue RGE Dominicana. Apuntó que Babilonia dirigió las facturas a RGE Dominicana, lo que evidenciaba su responsabilidad exclusiva por el pago de los trabajos realizados. También argumentó que, conforme las disposiciones de la *Ley General de Corporaciones*, RGE Dominicana no responde por deudas de una corporación afiliada. En fin, RG Engineering adujo que la demanda dejaba de exponer una reclamación que justificara la concesión de algún remedio en su contra, por lo cual procedía desestimar la demanda respecto a esa corporación.

Babilonia se opuso a la moción de desestimación de RG Enginnering.[4] Precisó que la demanda relata hechos que demostraban que el acuerdo para la contratación de los servicios fue aprobado por el director general de RG Engineering, en Puerto Rico. Añadió que esta corporación fue quien lideró el proceso de negociación y contratación. Así pues, basado en el estándar establecido para el análisis de la Regla 10.2 (5) de Procedimiento Civil, *supra,* Babilonia solicitó que se denegara la moción de desestimación incoada por RG Engineering. Ésta última presentó una *Réplica a Oposición a Moción de Desestimación*.[5]

De otra parte, el 28 de abril de 2025, la codemandada RGE Dominicana presentó una *Moción solicitando paralización de procedimientos y posterior desestimación conforme la doctrina de*

---

[3] *Moción de desestimación, Íd.*, apéndice 22.
[4] *Moción en Réplica y Oposición a desestimación, Íd.,* apéndice 35.
[5] *Réplica a Oposición a Moción de Desestimación, Íd.,* apéndice 44.

*forum non conveniens,* por ser los tribunales de la Republica Dominicana los más apropiados o convenientes para atender la controversia.[6] Al respecto, y a tenor con los criterios de la doctrina incorporada en nuestro ordenamiento en *Ramírez Sainz v. S.L.G. Cabanillas,* 177 DPR 1 (2009), afirmó que la obra y los servicios fueron realizados en la República Dominicana; que presentó una reconvención en el pleito y que muchos de los testigos serían ciudadanos dominicanos a los que se les dificultaría el visado y viaje a Puerto Rico; que el foro dominicano facilitaría el acceso a una vista ocular; que la solicitud se presenta al inicio del pleito; y que su concesión facilitaría una posible ejecución de la sentencia. Para sustentar su postura en cuanto al foro más apropiado para resolver la disputa, RGE Dominicana acompañó un *Informe legal sobre jurisdicción, proceso judicial y conveniencia del foro en República Dominicana,* suscrito por su abogada, Lcda. Larissa Castillo. De tal forma, RGE Dominicana solicitó al TPI que decretara la paralización de los procedimientos y le concediera término a Babilonia para presentar su reclamación en el foro alternativo.

El 2 de junio de 2025, Babilonia se opuso a la solicitud de paralización de los procedimientos y aplicación de la doctrina del *forum non conveniens.*[7] Alegó que el TPI puede adquirir jurisdicción sobre una corporación foránea que tenga contactos mínimos en Puerto Rico. Adujo que, al elaborar la doctrina, el Tribunal Supremo en el citado caso de *Ramírez Sainz* aplicó unos hechos similares al presente caso y negó paralizar el procedimiento ante el TPI. A su vez, puntualizó que este es un caso de cobro de dinero donde ambas corporaciones tienen propiedades en Puerto Rico y que los términos y condiciones del acuerdo fueron pactados en esta jurisdicción.

---

[6] *Moción solicitando paralización de procedimientos y posterior desestimación conforme la doctrina de forum non conveniens, Íd.,* apéndice 30.
[7] *Moción en réplica y Oposición a paralización de procedimientos y desestimación conforme a la doctrina de forum non conveniens, Íd.,* apéndice 42.

También mencionó que mover el caso a la República Dominicana lo colocaría en una posición de desventaja frente a la parte demandada. Así, peticionó que se denegara la solicitud de RGE Dominicana y se le ordenara contestar la demanda para dar inicio con el descubrimiento de prueba.

Sometido el asunto, el 15 de agosto de 2025, el TPI notificó la *Resolución y Orden* objeto del presente recurso. Tras esbozar la normativa pertinente a la jurisdicción sobre la persona, la doctrina de contactos mínimos y la de *forum non conveniens,* el foro primario analizó las alegaciones de la demanda y concluyó que éstas son suficientes para sustentar su jurisdicción sobre RGE Dominicana, al amparo de la doctrina de contactos mínimos. En ese contexto, el TPI precisó que las aseveraciones de la demanda establecían claramente que los términos y condiciones del contrato fueron negociados por ambas corporaciones, que dichas negociaciones se llevaron a cabo en Puerto Rico y que RGE Dominicana, con sus actuaciones, se benefició del foro local para llevar a cabos sus labores en la República Dominicana.

Además, el TPI concluyó que, basado en los hechos alegados en la demanda, y los fundamentos de la moción de paralización apoyada en la doctrina de *forum non conveniens,* los codemandados no habían demostrado que el foro doméstico resultara claramente inapropiado y que el tribunal alternativo fuere el más apropiado para resolver la disputa. El TPI recalcó que los hechos de la demanda esbozan una causa de acción en cobro de dinero que surge de un contrato negociado en Puerto Rico por una corporación doméstica, con la participación de una corporación foránea que se benefició de dicha contratación en nuestra jurisdicción. Añadió que la prueba para sostener la causa de acción de incumplimiento y cobro de dinero, en su mayoría, es documental y se encuentra disponible en nuestra jurisdicción.

De igual forma, el TPI coligió que, en virtud de lo anterior, y bajo el estándar aplicable a la Regla 10.2 (5) de Procedimiento Civil -asumiendo como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante- no procedía la desestimación de la demanda en cuanto a la codemandada RG Engineernig. Ello pues, porque de las alegaciones surgían hechos específicos en cuanto a la participación de la codemandada RG Engineering en la contratación y facturación por los servicios brindados por Babilonia los cuales, de probarse en su día, pudieran dar lugar a la concesión de un remedio en contra de dicha codemandada.

Por todo lo anterior, el TPI declaró *no ha lugar* a la *Moción solicitando paralización de procedimientos y posterior desestimación conforme la doctrina de forum non conveniens* presentada por RGE Dominicana, así como la *Moción de Desestimación* presentada por RG Engineering, ordenó la continuación de los procedimientos y concedió término a dichas codemandadas para contestar la demanda.

El 2 de septiembre de 2025, tanto RG Engineering como RGE Dominicana presentaron sus respectivas mociones de reconsideración.[8] Mediante órdenes separadas, notificadas el 2 de septiembre de 2025, el TPI declaró *no ha lugar* ambas mociones de reconsideración.[9]

Inconforme con lo resuelto, el 2 de octubre de 2025, las codemandadas presentaron sendos recursos de *certiorari* ante este foro apelativo. Primeramente, RG Engineering incoó el recurso TA2025CE00541[10], y apuntó como único señalamiento de error que:

> Erró el TPI al negarse a desestimar la reclamación incoada contra [RG] a pesar de que la demanda no aduce suficientes hechos que justifiquen la concesión

---

[8] *Íd.*, apéndices 49 y 50.
[9] *Íd.*, apéndices 51 y 52.
[10] *Petición de Certiorari,* SUMAC-TA2025CE00541, entrada 1.

de un remedio cuando [RG] no fue parte del contrato supuestamente incumplido ni se alegó que [RG] se hubiese obligado al pago solidario de los servicios que fueron contratados por su afiliada en la Rep[ú]blica Dominicana.

Por otro lado, RGE Dominicana instó el recurso TA2025CE00547[11], señaló que:

A. Erró el TPI al denegar la paralización y subsiguiente desestimación de la demanda a pesar de los razonados argumentos que sustentan la solicitud basada en la Doctrina de *Forum Non Conveniens.*

B. Erró el TPI al no desestimar el presente caso en cu[a]nto a RGE Dominicana a pesar de que de los hechos de la demanda no surgen suficientes hechos bien alegados para sustentar la jurisdicción del Tribunal sobre la compareciente conforme la Doctrina de Contactos Mínimos.

**II.**

**A.**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[12]

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.[13] Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos

---

[11] *Recurso de Certiorari,* SUMAC-TA2025CE00547, entrada 1.

[12] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).

[13] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra*, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra*, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento[14], se justifica nuestra intervención. Estos criterios son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la

---

[14] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción.[15]

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[16] Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

**B.**

El Tribunal Supremo ha establecido que los foros revisores no interfieren con las facultades discrecionales de los foros primarios, exceptuando aquellas circunstancias en las que se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[17] Además, se requiere que la intervención en esta etapa evite un perjuicio sustancial.[18]

La discreción judicial se define como "'una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera'".[19] El ejercicio de este discernimiento se encuentra estrechamente relacionado con el concepto de razonabilidad.[20] Así pues, la discreción no implica que los tribunales

---

[15] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).

[16] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

[17] *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 210; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 497 (2022); *Rivera y otros v. Bco. Popular*, supra, pág. 155.

[18] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

[19] *Rivera et al. v. Arcos Dorados et al.,* supra, citando a *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657–658 (1997).

[20] *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 272 (2021); *Rivera y otros v. Bco. Popular*, supra.

puedan actuar de una forma u otra en abstracción del resto del derecho.[21]

El Tribunal Supremo ha expresado que un tribunal abusa de su discreción:

> [...] cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste, o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[22]

## c.

Las *alegaciones* son "los escritos mediante los cuales las partes presentan los hechos en que apoyan o niegan sus reclamaciones o defensas".[23]  Su propósito es "notificar a grandes rasgos cuáles son las reclamaciones y defensas de las partes".[24]  Por tanto, cualquier alegación mediante la cual una parte solicite un remedio – por ejemplo, una demanda – incluirá una relación sucinta y sencilla de los hechos que demuestran que procede el remedio solicitado y la solicitud del remedio que se alega debe concederse.[25]

Por su parte, la Regla 10.2 de Procedimiento Civil[26], permite que un demandado en una demanda, reconvención, demanda contra coparte, o demanda contra tercero, solicite al tribunal la desestimación de las alegaciones en su contra.  La mencionada regla establece lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:

---

[21] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013); *Bco. Popular de P.R. v. Mun. de Aguadilla*, supra, pág. 658.

[22] *SLG Zapata Rivera v. J.F. Montalvo*, supra, citando a *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009)).

[23] *Conde Cruz v. Resto Rodríguez et al.,* 205 DPR 1043, 1061 (2020), citando a R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, Ed. Lexis Nexis, 2017, Sec. 2202, pág. 279.

[24] *Íd.,* pág. 1062.

[25] Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1.

[26] 32 LPRA Ap. V, R. 10.2.

(1) falta de jurisdicción sobre la materia;
(2) falta de jurisdicción sobre la persona;
(3) insuficiencia del emplazamiento;
(4) insuficiencia del diligenciamiento del emplazamiento;
**(5) dejar de exponer una reclamación que justifique la concesión de un remedio;**
(6) dejar de acumular una parte indispensable.[27]

A los fines de disponer de una moción de desestimación por el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y considerarlos de la manera más favorable a la parte demandante.[28] Dentro del ejercicio de su discreción, el foro primario no deberá desestimar la demanda a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación.[29] Es decir, la desestimación procede cuando de los hechos bien alegados en la demanda no se puede identificar una relación entre los hechos alegados y el derecho sustantivo que genera la responsabilidad del demandado hacia el demandante.[30] Cónsono con lo anterior, a pesar de interpretar liberalmente la demanda, corresponde la desestimación si no hay remedio alguno disponible en nuestro estado de derecho.[31]

Por consiguiente, es necesario considerar si, a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una

---

[27] *Íd.* (Énfasis suplido).
[28] *Costas Elena y otros v. Magic Sport y otros,* 213 DPR 523, 533 (2024); *Eagle Security v. Efrón Dorado et al,* 211 DPR 70, 78 (2023); *Cobra Acquisitions v. Mun. de Yabucoa et al.,* 210 DPR 384, 396 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013).
[29] *Consejo de Titulares v. Gómez Estremera et al.,* 184 DPR 407, 423 (2012); *Pressure Vessels P.R. v. Empire Gas P.R.,* 137 DPR 497, 505 (1994).
[30] *Torres, Torres* v. *Serrano Torres,* 179 DPR 481, 501 (2010).
[31] *Ortiz Matías et al.* v. *Mora Development,* 187 DPR 649, 654 (2013).

reclamación válida.[32] Así pues, para que un demandado prevalezca cuando presente una moción de desestimación al amparo de la Regla 10.2 (5), *supra,* debe establecer con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda probarse en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor.[33]

**D.**

La *jurisdicción* es la autoridad de un tribunal para considerar y disponer de casos y controversias.[34] En lo atinente, la *jurisdicción sobre la persona* se perfila como "[e]l poder del tribunal para sujetar a una parte a su decisión".[35] En la consecución de dicho principio, el estado de derecho reconoce que un tribunal adquiere jurisdicción sobre la persona del demandado, ya sea mediante el adecuado empleo de las normas procesales de emplazamiento provistas en las Reglas de Procedimiento Civil, o a través del mecanismo de la sumisión voluntaria a la autoridad judicial, explícita o tácitamente.[36]

En particular, la Regla 3.1 (a) (2) de Procedimiento Civil expresamente establece que el Tribunal General de Justicia tendrá jurisdicción "sobre las personas domiciliadas y las no domiciliadas que tengan cualquier contacto que haga la jurisdicción compatible con las disposiciones constitucionales aplicables".[37]

Como regla general, los tribunales de determinada localidad solo pueden ejercer autoridad sobre las personas que residen en su

---

[32] *Costas Elena y otros v. Magic Sport y otros,* supra, pág. 534; *Eagle Security v. Efrón Dorado et al,* supra, pág. 78; *Cobra Acquisitions v. Mun. de Yabucoa et al.,* supra, pág. 396; *Pressure Vessels P.R. v. Empire Gas P.R.*, supra, pág. 505.

[33] *Costas Elena y otros v. Magic Sport y otros,* supra, pág. 534.

[34] *FCPR v. ELA et al.,* 211 DPR 521, 529 (2023); *Cobra Acquisitions v. Mun. de Yabucoa et al.,* 210 DPR 384, 394 (2022); *Pueblo v. Rivera Ortiz,* 209 DPR 402, 414 (2022); *Beltrán Cintrón et al. v. ELA et al,* 204 DPR 89, 101 (2020).

[35] *Trans-Oceanic Life Ins. v. Oracle Group,* 184 DPR 689, 701 (2012), citando a R. Hernández Colón, *Derecho Procesal Civil,* 5ta ed., San Juan, Lexisnexis, 2010, pág. 40.

[36] *Cirino González v. Adm. de Corrección, et al.,* 190 DPR 14, 29 (2014).

[37] 32 LPRA Ap. V, R. 3.1 (a) (2).

territorio.[38]  No obstante, a manera de excepción, el ordenamiento jurídico reconoce la facultad de los tribunales de adquirir jurisdicción sobre un demandado no domiciliado cuando, entre otras instancias, se establece la existencia de contactos mínimos entre éste y el foro que pretende ejercer autoridad sobre su persona, todo en la consecución de las garantías del debido proceso de ley.[39] A su vez, a ello se suma la exigencia de que la causa de acción sometida a la consideración del tribunal "surja o esté relacionada con tales contactos, de suerte que el ejercicio de su jurisdicción no infrinja las nociones tradicionales del trato justo y justicia sustancial enraizadas en el ordenamiento y principios constitucionales".[40] A tenor con ello, se dispone que los contactos mínimos deben surgir del demandado hacia el foro, de modo que se haya forjado una relación recíproca entre éste, el foro y el litigio pendiente resolución judicial.[41]

Ahora bien, "aún bajo la doctrina de contactos mínimos, se requiere que el contacto dentro de la jurisdicción resulte de un acto afirmativo de la parte demandada" hacia el foro, que resulte en un provecho a su favor de los beneficios y protecciones de las leyes del lugar.[42]  Por ello, la doctrina jurisprudencial establece como regla para determinar si se puede adquirir jurisdicción sobre la persona de un no residente los siguientes criterios:

1. El demandado no residente debe realizar algún acto o consumar alguna transacción dentro del foro. No es necesario que la actividad se efectúe físicamente dentro del foro; el acto o transacción puede realizarse por correo. Un solo acto o transacción basta si sus efectos en el foro son suficientemente sustanciales para cualificar bajo la regla tercera.

2. La causa de acción debe surgir o resultar de las actividades del demandado dentro del foro. Es concebible que la causa de acción precisa se plasme

---

[38] *Shuler v. Shuler*, 157 DPR 707, 718 (2002).
[39] *Íd.,* pág. 720.
[40] *Íd.*, pág. 720.
[41] *Íd.*
[42] *Shuler v. Shuler,* supra, pág. 721, citando a *A. H. Thomas, Co. v., Tribunal Superior,* 98 DPR 883, 889 (1970).

fuera del foro, pero debido a las actividades del demandado en el foro aún exista el contacto mínimo sustancial que es necesario.

3. Habiéndose establecido bajo las reglas precedentes un contacto mínimo entre el demandado y el foro, la asunción de jurisdicción fundada en ese contacto debe ser compatible con los principios de trato imparcial y justicia sustancial del debido procedimiento de ley. Si se satisface esta norma, existe un contacto mínimo sustancial entre el foro y el demandado. La razonabilidad de someter al demandado a la jurisdicción se determina frecuentemente por las normas análogas a las de *forum non conveniens*.[43]

El Tribunal Supremo ha dicho que la doctrina de contactos mínimos tiene dos propósitos esenciales: (a) proteger al demandado de la carga que supone litigar en un foro distante o inconveniente, y (b) asegurar que los estados, por medio de sus tribunales, no rebasarán los límites que recaen sobre ellos por su condición de soberanos iguales entre sí en un sistema federal de gobierno.[44]

**E.**

Nuestro Máximo Foro, en el caso de *Ramírez Sainz v. SLG Cabanillas*[45], incorporó a nuestro ordenamiento la doctrina de *forum non conveniens*. Esta doctrina fue integrada con el fin de permitirle a los tribunales rehusarse a ejercer su jurisdicción en circunstancias excepcionales, a favor de los mejores intereses de las partes y de la justicia.[46] Bajo la referida doctrina, se presupone la existencia de jurisdicción por ambos foros.[47]

Previo a analizar si procede aplicar la doctrina de *forum non conveniens*, el foro primario está obligado a constatar que, efectivamente tiene jurisdicción y competencia sobre las partes y la materia.[48] Una vez establecida la jurisdicción, el demandado que interese paralizar un litigio bajo esta doctrina, deberá probar que el

---

[43] *A. H. Thomas, Co. v, Tribunal Superior*, supra, a la pág. 890.
[44] *Shuler v. Shuler,* supra, págs. 721-722.
[45] 177 DPR 1 (2009).
[46] *Íd.* pág. 37.
[47] *SLG Valencia v. García García*, 187 DPR 283, 326 (2012).
[48] *SLG Valencia v. García García,* supra, pág. 326; *Ramírez Sainz v. SLG Cabanillas,* supra, pág. 38.

foro doméstico resulta claramente inapropiado, que existe un foro en otro estado que también tiene jurisdicción, y que, es claramente el más apropiado para resolver la controversia.[49]  Si el demandado logra probar lo anterior, el foro doméstico deberá paralizar los procedimientos y concederle término al demandante para presentar su reclamación en el foro adecuado.[50]

Con el fin de determinar si un foro es claramente inapropiado, el tribunal deberá ponderar, entre otros, los factores privados siguientes: (1) la conveniencia para las partes de litigar en el Estado donde se encuentra el foro; (2) la localización de las fuentes de prueba y los mecanismos para obtenerlas; (3) si la petición para paralizar se presenta en un momento oportuno; (4) los términos prescriptivos; (5) el reconocimiento de sentencias, y (5) la posibilidad de ejecutar la sentencia en el país donde el demandado tiene sus bienes.[51] Es necesario destacar que, el Tribunal Supremo expresó que, estos factores son meramente ilustrativos, puesto que, el Tribunal de Primera Instancia "debe escrutar la sustancia de la disputa y evaluar los criterios realmente pertinentes".[52] No deben tomarse en consideración los factores públicos, por estos no ser acordes al propósito de la doctrina, ni deberá discriminarse a base de la nacionalidad o residencia habitual de las partes.[53]

En síntesis, el Tribunal Supremo ha dispuesto que,

… se puede paralizar una demanda, aunque se haya presentado en un tribunal con jurisdicción y sin propósito de causar daños a la otra parte, cuando la controversia tenga poca conexión con el foro doméstico, exponga al demandado a gastos excesivos u otras inconveniencias e injusticias, y, claro está, si existe un foro con jurisdicción y competencia que pueda entender en la controversia.[54]

---

[49] *Ramírez Sainz v. SLG Cabanillas*, supra, pág. 38.
[50] *Íd.*
[51] *Íd.*, págs. 38-39.
[52] *Ramírez Sainz v. SLG Cabanillas*, supra, pág. 39.
[53] *Íd.*
[54] *Íd.,* págs. 39-40.

Por último, señaló que la decisión de paralizar un procedimiento es de naturaleza discrecional, por lo cual, tal decisión deberá ser revisada por los foros apelativos según el estándar de abuso de discreción. A esos fines, el foro sentenciador debe especificar en su resolución cómo ha aplicado el análisis adoptado en *Ramírez Sainz* a los hechos particulares del caso.[55]

### III.

Tratándose el presente caso de la denegatoria de mociones de carácter dispositivo, la Regla 52.1 de Procedimiento Civil, *supra*, nos faculta a revisar el dictamen recurrido. Sin embargo, ello está sujeto al ejercicio de nuestra discreción en atención a los criterios dispuestos en la Regla 40 de nuestro Reglamento, *supra*.

Al evaluar las peticiones de *certiorari* concluimos que no concurren los criterios contenidos en la Regla 40 de nuestro Reglamento, *supra,* por lo que no atisbamos razón alguna para intervenir con lo dispuesto por el TPI.

La actuación del foro recurrido de denegar la moción de desestimación de RG Engineering descansó en el ejercicio de su sana discreción y una interpretación favorable de los hechos bien alegados en la demanda, según requiere el estándar de la Regla 10.2 (5) de Procedimiento Civil, *supra*. Dicho codemandado no presentó argumentos que demuestren que, al emitir su determinación, el TPI actuara de forma arbitraria o caprichosa, o en abuso de su discreción o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho. Tampoco demostró que, al denegar la solicitud de desestimación, el TPI hubiera incurrido en un fracaso de la justicia.

Por otro lado, el TPI aplicó el análisis correspondiente a la doctrina de *forum non conveniens* y concluyó que RGE Dominicana

---

[55] *Íd.,* pág. 40.

no logró demostrar que el foro de la República Dominicana era claramente el más apropiado para atender las causas de acción planteadas. Es por lo que, determinó ejercer su jurisdicción y continuar con los procedimientos conducentes a adjudicar la controversia. Al evaluar tal determinación según el estándar de abuso de discreción, colegimos que nada en el expediente nos convence de que el foro recurrido hubiera incurrido en error o en un abuso de la discreción que le asiste, de forma tal que se haga meritorio eludir la norma de abstención judicial que regula el ejercicio de nuestras funciones.

En fin, el examen detenido del expediente apelativo y de los documentos que conforman el apéndice, vistos a la luz de la normativa que nos guía en el ejercicio revisor, nos lleva a concluir que no se configura ninguna circunstancia que justifique expedir el auto discrecional solicitado, en ambos recursos.

Ante dicho escenario, nos abstenemos de intervenir con la *Resolución y Orden* recurrida.

**IV.**

En virtud de lo expuesto, denegamos la expedición del auto de *certiorari* en los recursos de epígrafe.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones